# Richmond.

## COMMONWEALTH v. RICHMOND AND PETERSBURG R. R. Co.

### JANUARY 21, 1886.

1. TAXATION—*Exemptions—Sovereignty.*—The general rule and policy of the State is to impose taxes on all property. Exemption is the exception. But the power of exemption, as well as the power of taxation, is an essential element of sovereignty. *City of Richmond* v. *R. and D. R. R. Co.*, 21 Gratt. 604.

2. IDEM—*R. R. companies—Charters—Contracts.*—It is settled law that an exemption from taxation granted in the charter of a railroad company, constitutes a contract which is protected by the federal constitution, and is irrepealable, unless the power of repeal has been reserved, or subsequently acquired.

3. REPEAL—*Express—Implied—Rule.*—The repeal of a special statute must either be express, or the manifestations of the legislative intent to repeal must be so clear as to be equivalent to an express direction.

4. RAILROADS—*Exemption—Case at bar.*—The charter of the Richmond and Petersburg Railroad Company provides that, "All machines, wagons, vehicles and carriages purchased with the funds of the company, and all their works constructed under the authority of this act, and all profits which shall accrue from the same, shall be vested in the respective shareholders of the company forever, in proportion to their respective shares; and the same shall be deemed personal estate, and shall be exempt from any public charge or tax whatsoever."

HELD:

    1. All the property and profits of the company, and also all the shares of stock of the respective shareholders, are exempt from taxation, whether State, county or municipal.

    2. The State did not reserve, and has not since acquired, the power to repeal this exemption, and has neither repealed nor attempted to repeal it.

Error to judgment of circuit court of city of Richmond, rendered November 8, 1884.

The case was heard at Richmond, and decided at Wytheville June, 1885, but was reheard and decided finally at Richmond January 21, 1886.

Opinion states the case.

*Attorney-General F. S. Blair, Christian & Christian,* and *B. A. Hancock,* for the plaintiff in error.

*Pegram & Stringfellow* and *B. H. Nash,* for the defendant in error.

RICHARDSON, J., delivered the opinion of the court.

This case comes up on a writ of error to a judgment of the circuit court of the city of Richmond, and has been argued, and is to be determined by this court upon the *facts agreed,* as set forth in the single exception of the plaintiff in error to the judgment of said circuit court.

The real question in the case is, whether defendant corporation is, under the laws of this Commonwealth, exempt from taxation, as held by the judgment of the court below. The facts agreed, so far as material, are briefly these:

I. That the Richmond and Petersburg Railroad Company was chartered by an act of the general assembly of Virginia, passed March 14, 1836.

II. That so much of the 22d section of said act (the company's charter) as is pertinent to the question in hand, reads: " All machines, wagons, vehicles and carriages purchased as aforesaid with the funds of the company, and all their works constructed under the authority of this act, and all profits which shall accrue from the same, shall be vested in the respective

shareholders of the company forever, in proportion to their respective shares; and the same shall be deemed personal estate, and shall be exempt from any public charge or tax whatsoever."

III. That under said section of its charter the said company, from its incorporation, has claimed, and, in fact, enjoyed, exemption to the present time.

IV. That the exemption granted by the said 22d section of the company's charter is in full force and effect unless said 22d section was intended to be repealed, and, in fact, was repealed, by the following acts—to-wit: Code, 1860, sections 46–7, p. 249–50; Acts 1861–'2, p. 6, § 13; Acts 1862–'3, p. 7–8, § 17; Acts 1865–'6, p. 63, § 12; Acts 1866–'7, p. 753, § 92; Acts 1869–'70, p. 303, § 48, p. 355, § 8; Acts 1871–'2, p. 175, § 91, p. 473, § 8; Joint Resolution April 4, 1876–'7, p. 328; Acts 1876–'7, p. 138, § 20; Acts 1881–'2, p. 507, § 20.

V. That the property of said company was assessed for taxation under the aforesaid joint resolution of April 4, 1877, for the years from 1865 to 1877 inclusive, and since by direction of the board of public works; that said claim was promptly resisted by the company, and has never been enforced.

VI. That by section 20, of the act of April 22, 1882, for the assessment of taxes on persons, property, &c., a tax is imposed on every railroad and canal company *not by its charter exempt from taxation.* And it is further agreed that all acts repealing exemption from taxation enjoyed by other companies whose charters contained such exemptions shall be received as evidence of the intent of the legislature in this case, the court to determine the weight of such evidence.

This case has been argued by counsel on both sides with marked ability. For the plaintiff in error two propositions are contended for:

1st. That according to the true construction of the 22d sec-

tion (the exemption clause) of the charter of the Richmond
and Petersburg Railroad Company, only the shares of stock,
and not the property and earnings of the said company, are
exempt from taxation.

2d. That if the first proposition be unsound, the exemption
from taxation granted by said 22d section has been validly and
constitutionally repealed by the legislature. These being the
questions to be determined, they will be considered in the
order stated.

First, then, is the said 22d section of said company's char-
ter susceptible of the construction contended for; or, in other
words, does the exemption in question extend only to the shares
of stock, and not to the property and earnings of the company?
We are clearly of opinion that the exemption extends to the
property and earnings as well as to the shares of stock, and
that the construction contended for is unsound and cannot
prevail.

This is a question of legislative intent; and in solving the
question in dispute, we are required to look to the words
employed, according to their obvious meaning, and in this
way ascertain and declare what was the legislative intent—
what did the legislature mean by the language employed, and
in the connection in which it is employed as we find it in the
act. In pursuing this enquiry, we must keep in view the rule
of construction on this subject, which forbids the surrender of
the right of taxation, except when done by the clear and unam-
biguous expression of the legislative will to that effect—the
general rule and policy of the State being to impose taxes on
all property, exemptions being in the nature of exceptions to
the general rule. *Cooley on Taxation,* 146.

It cannot at this day be necessary to enquire into the right
of the legislature to make exemptions. The general right to
do so is involved in the right to apportion taxes. *Cooley on*

*Taxation,* 145.  In considering this precise question, Staples, J.,
in *City of Richmond* v. *Richmond and Danville R. R. Co.,* 21
Gratt. 604, said: "The power of exemption, as well as the
power of taxation, is one of the essential elements of sove-
reignty."

We come now directly to the exemption clause contained in
said 22d section, which reads: " All machines, wagons, vehicles,
and carriages, purchased as aforesaid with the funds of the
company, and all their works constructed under the authority
of this act, and all profits which shall accrue from the same,
shall be vested in the respective shareholders of the company
forever, in proportion to their respective shares; and the same
shall be deemed personal estate, and shall be exempt from any
public charge or tax whatsoever."

Very slight attention to the frame and structure of the pro-
vision in question will show that the construction sought to be
placed upon it by counsel for the plaintiff in error is far too
narrow and restricted, and obviously at war with the real
meaning of the legislature, as clearly set forth by the language
used.   The contention rests upon the idea that the word
"same" in the last clause of the provision refers to "shares,"
which is the last word in the preceding clause, and not to the
company's property and profits mentioned in said first clause.
It cannot be so held without doing violence to the grammatical
structure of the provision, taken all together, as well as to the
plain legislative meaning thereby expressed.

What is declared by this clause as a whole?  1st, That all
machines, wagons, vehicles, and carriages, purchased with the
funds of the company, as well as all the company's works con-
structed under the authority of the act, and all profits to accrue
therefrom, shall be vested in the respective shareholders of the
company forever, in proportion to their respective shares.  Such
is the first clause, which is separated from the remaining or

last clause by a semi-colon.   Now, it is too plain to admit of dispute that the above language, "shall be vested in the respective shareholders of the company forever, in proportion to their respective shares," refers to the company's property and profits, just before enumerated, and declares in whom and how it shall vest, and performs no other office whatever, and for all other purposes is utterly useless.   This being so, how is it possible to hold that the word "same," coming after a semi-colon, and in the beginning of the last clause, refers to anything short of the company's property and profits, as well as the shares of stock mentioned in the first part of said first clause? Taking the whole provision together, and assigning to each number thereof its full, natural, and grammatical import, it is perfectly clear that the legislature intended to say, and did say, that the company's property, works, and profits shall be deemed and treated as personal estate, shall be forever vested in the respective shareholders of the company, in proportion to their respective shares, exempt from any public charge or tax whatsoever.   That such is the clearly-expressed legislative intent is too apparent to admit of doubt or to make necessary any resort to rules of construction.

. If upon this question there could be a doubt, it has been put at rest by the decision of this court in the case of *City of Richmond* v. *Richmond & Danville R. R. Co., supra.*   The corresponding provision in the charter of the Richmond & Danville R. R. Co., reads: "All machines, wagons, vehicles or carriages belonging to the company, with all their works, and all profits which shall accrue from the same, shall be vested in the respective shareholders forever, in proportion to their respective shares; shall be deemed personal estate, and exempt from any charge or tax whatsoever."   Here we have the respective exemption clauses in respect to these two companies spread out before us for comparison.   However, ingenuity cannot suggest any sub-

stantial difference between them.    The provision in the charter
of the Richmond & Petersburg Company is somewhat more
wordy and emphatic, while that in the charter of the Rich-
mond & Danville Company is characterized by greater concise-
ness—importing precisely the same thing.    Both declare the
property, works and profits to be personal estate, vests it in the
respective shareholders forever, in proportion to their respective
shares, exempt from any charge or tax whatsoever.

Delivering the opinion in the case of *City of Richmond* v.
*Richmond & Danville R. R. Co.*, *supra*, Staples, J., in a most con-
clusive opinion, said: "The obvious meaning is that the prop-
erty designated, that is, the machines and carriages belonging
to the company, 'with all their works,' should be deemed per-
sonal estate, and exempt from any charge or tax whatsoever.
If authority upon this point were necessary, it may be found
in the case of the *Mayor, &c., of Baltimore*, v. *Baltimore & Ohio
R. R. Co.*, 6 Gill's R. 288."    And the learned judge, proceeding,
says: "It was held in that case that the real and personal prop-
erty of the company was exempt from taxation under a clause
in the charter which provided, 'that the shares of its capital
stock should be deemed personal estate, and exempt from the
imposition of any tax or burden.'    The court say, the design
contemplated by the legislature, in the insertion of this clause,
was to confer a substantial, not a nominal, benefit on the stock-
holders, and to induce capitalists to risk their money in a novel
and hazardous enterprise.    To impart," says the same judge,
"to the legislature—in the case before us—an intention to
exempt the shares of stock from taxation, and at the same
time to reserve the right to tax everything which constituted
it a stock and gave it its value, would be gratuitously to cast
an imputation upon the legislature inconsistent with every
principle of judicial courtesy."    It cannot be necessary to pur-
sue this branch of the subject further.    The construction con-

tended for cannot be sustained; the intention of the legislature
to exempt from taxation the property, profits and shares of
stock being manifest.   We come now to the consideration of
the second proposition contended for by counsel for the plain-
tiff in error, "that the right of exemption from taxation has
been validly and constitutionally repealed by the legislature."
This is the real question in the case, which may be stated thus:
Has the legislature in fact repealed, or intended by any
or all the acts relied on to repeal, the exemption granted
by its charter to the Richmond & Petersburg R. R. Co.?

It is conceded as settled law that an exemption from taxa-
tion granted in the charter of a railroad company constitutes
a contract which is protected by the Federal constitution, and
cannot be repealed by the State when the right to do so has
not been reserved or does not exist.

From what has been already said in respect to the exemp-
tion clause in the charter in question, it is clear that the State
did grant to this company exemption from taxation—State,
county, and municipal—and that all the property, profits, and
shares of stock of said company are embraced in the exemp-
tion.   It is also unquestionably true that the legislature had
the right to grant this exemption.   See *City of Richmond* v.
*Richmond and Danville R. R. Co., supra; Home of the Friendless*
v. *Rouse,* 8 Wall. 438, and numerous other authorities which
need not be cited.

It is not pretended that by any act of the legislature, in
terms referring to this company, the contract of exemption
evidenced by the 22d section of the company's charter has
been expressly repealed; the fullest extent of the contention
by counsel for the plaintiff in error being that the exemp-
tion has been, by necessary implication, repealed by certain
acts of the legislature referred to in the case agreed.   On the
contrary, it is a fact agreed that said contract of exemption is

in full force and effect, unless repealed by the several acts referred to in the case agreed.

It is, however, most earnestly insisted that the exemption in question was intended to be, and, in fact, was repealed by sections 46 and 47 of chapter 3, Acts of 1859–'60, found in the Code of 1860 at page 200. But before commenting on the provisions of this act it is necessary to examine, in their chronological order, several acts passed prior thereto by the legislature of Virginia, which have an important bearing upon the question, and the acceptance by this company of certain provisions of certain of them, it is insisted, remitted to the legislature the right to repeal the company's exemption from taxation, which right, is claimed, was intended to be, and, in fact, was legitimately exercised by said act passed at the session of 1859–'60, before referred to.

The acts prior to the one last named, and to be first examined in the order in which they were passed, will now be considered.

1st. The charter act, passed on the 14th day of March, 1836, containing the exemption clause in favor of this company, as to which no further comment is necessary.

2d. The act passed on the 11th day of March, 1837 (Acts 1836–7, pages 101–112), entitled "An act prescribing certain general regulations for the incorporation of railroad companies." This act is essentially what its title imports. It professes only to prescribe certain *general regulations* in respect to the *incorporation* of railroad companies, and necessarily refers to companies thereafter incorporated. It makes no reference whatever to the Richmond and Petersburg Railroad Company, or to any company incorporated prior thereto, but confines itself to its real object, that of prescribing "general regulations." And it is a fact, the striking importance of which will hereinafter appear, that this act of 1837, known as

the general railroad law, does not contain one word either in respect to imposing taxes on railroad companies or in respect to the exemption of such companies from taxation.

But the insistence is, that by reason of the acceptance, by this company, of certain provisions contained in the subsequent act, passed March 30, 1838 (hereinafter to be considered), it became subject to all the provisions of the general railroad law of 11th of March, 1837, and especially the thirty-fifth section thereof, which reads: "Any part of any charter or act of incorporation, granted agreeably to the provisions of this act, shall be subject to be altered, amended or modified by any future legislature as to them may seem proper; except so much thereof as prescribes the rate of compensation or tolls for transportation: *provided, that the rights of property acquired under this act, or any other act,* OR ANY OTHER ACT ADOPTING THE PROVISIONS OF THIS ACT, SHALL NOT BE TAKEN AWAY OR IMPAIRED *by any future act of the legislature.*"

The words of this proviso are italicized by me in order to give due prominence to the true spirit and intent of this provision of the general railroad law.

3d. We come to the consideration of the act of March 30, 1838, entitled "An act concerning the Richmond and Petersburg Railroad Company." This act contains the first and only legislative reference to this company subsequent to its charter in 1836, except a certain joint resolution passed on the fourth day of April, 1877, which will be noticed in its appropriate place. The first section of this act provided that the board of public works pay at once the whole unpaid subscription of the State for 2,000 shares of the capital stock of the Richmond and Petersburg Railroad Company, authorized by a prior act, passed January 17, 1837, in advance of the regular calls; the money so paid to be applied to the quotas on the State's subscription, as they shall fall due, and the sur-

plus in excess of the quotas so due to bear interest at six per cent. until the whole amount advanced should be absorbed by such accruing quotas.

Passing for the present the second section, we come to the third section of same act, which provided that the board of public works should, on behalf of the Commonwealth, loan to the said Richmond and Petersburg Railroad Company $150,000, the payment of same to be secured by a mortgage executed by the company to the president and directors of the board of public works, on all their property and net income, said lease to be made out of the unappropriated income of the fund for internal improvement, and the mortgage to secure the repayment of said loan, with interest, to be recorded in the county court of Chesterfield county.

The fourth section provided, "That if the income of the fund for internal improvement be inadequate to pay the said loan, the said board of public works are authorized to borrow the requisite amount on the same terms and conditions prescribed in the act passed at the present session, entitled 'An act to authorize a loan on the part of the State to the Winchester and Potomac Railroad Company.'"

Now, the second section of the same act, referred to above and temporarily passed by, provided : " Be it further enacted, that if said company avail .themselves of the benefit of this act it shall be subject to all the provisions of the act, entitled 'An act prescribing certain general regulations for the incorporation of railroad companies,' passed March 11, 1837, and any provision or provisions in the act incorporating said company, inconsistent with the said act of March 11, 1837, shall be, and the same is hereby, repealed." Then follow other provisions not applicable here. Such are the provisions of the act of March, 1838, relied on by the plaintiff in error; which provisions, it is agreed, were accepted by the Richmond and

Petersburg Railroad Company. The question right here is, to what extent is the charter exemption of this company from taxation affected by its acceptance of said provision?

The general tax laws prior to 1860 uniformly provided that "every railroad and canal company not exempted by its charter from taxation" should make certain reports and pay certain taxes. The general tax law of 1860, passed at the session of 1859–'60 (see Code 1860, p. 200), omits the words "not exempted by its charter from taxation," and the contention is that the legislature, by this omission merely in the general tax law, intended to repeal, and did repeal, the 22d section of this company's charter. We are clearly of opinion that this view cannot be maintained without utterly disregarding well established rules of judicial construction.

It is true, that by the acceptance of the act of March 30, 1838, this company became subject to the provisions of the general railroad law of March 11, 1837; but it is argued by counsel for the plaintiff in error that the exemption clause in this company's charter thereby became subject to be altered, amended or modified at the will of any future legislature; and for this proposition counsel rely on *Tomlinson* v. *Jessup,* 15 Wall. 454, and *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347, and similar cases. These cases have no application here. In the case first named the charter was granted under a law which provided that "every charter or incorporation granted, renewed or modified as aforesaid, shall, at all times, remain subject to amendment, alteration or repeal by the legislative authority." In the second case the law provided: "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special acts passed pursuant to this section, may be altered from time to time or repealed."

From these provisions of law, which controlled these cases,

it is obvious that they have no bearing upon the case in hand, except upon the idea that the acceptance by this company of the provisions of said act of 1838, rendered its exemption liable to be repealed, and that said exemption was repealed, as aforesaid, by the general tax law of 1860. Can the last named act be so construed? We think not.

It is admitted that in 1860 there were railway companies in Virginia liable to taxation, and others exempt by irrepealable contracts contained in their charters. This being so, to construe the words "*every* railroad company," so as to embrace necessarily *all* companies, would be to render the act plainly unconstitutional, a construction that will never be adopted when any other, consistent with the constitution, can be given.

The principles applicable to the repeal of statutes by implication are few and simple. The general rule, laid down in *Gregory's Case*, 6 Coke, 19 *b*, and, so far as known, universally accepted as correct, is that "a later statute in the affirmative shall not take away a former act, and *eo potius*, if the former be particular and the latter general." And it is said that this rule is enforced more rigidly when the attempt is made, by a later general law, to repeal the provisions of a prior special charter, than in any other class of cases. *Town of Ottowa* v. *La Salle*, 12 Ill. 340; *People* v. *Quigg*, 59 N. Y. 88; *Proudfoot* v. *Wightman*, 78 Ill. 552–3; *Frosdick* v. *Perrysburg*, 14 Ohio S. 485–6–7; and especially *The State* v. *Winston*, 3 Zab. 530, and numerous other cases.

The well-settled doctrine derived from all the authorities is, that "laws, special and local in their application, are not deemed repealed by general legislation except upon the clearest manifestation of an intent by the legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end." This doctrine is especially illustrated in the case of *The Mayor,*

&c., v. *The Baltimore and Ohio R. R. Co.*, 6 Gill & J. 297–8.
Perhaps the rule is nowhere more concisely stated than by
Mr. Sedgwick, who says: " The rule has been laid down in this
form : The repeal of a special statute passed for a special pur-
pose must either be express, or the manifestation of the legis-
lative intent to repeal must be so clear as to be equivalent to
an express direction." Citing *Cole* v. *Supervisors*, 11 Iowa, 552 ;
see Sedgwick on Stat. and Con. d, 99, *note.*

Is it not clear that the legislature, by the use of the words,
"every railroad," &c., in the general tax law of 1860, necessa-
rily intended every railroad not exempt by its charter from
taxation ? The construction contended for on behalf of the
plaintiff in error would impute to the legislature (1) the delib-
erate design to violate both the Federal and State constitutions,
and (2) the unworthy object of " resorting to indirection to
find direction out:" To impute to the legislature either motive
would be grossly discourteous, to say the least.

How and to what extent did the provisions of the acts afore-
said, accepted by this company, affect its charter ?

In the first place, the 35th section of the act of March 11, ·
1837 (the general railroad law), only provides that any part of
any charter or act of incorporation, granted agreeably to the
provisions of that act, should be subject to be altered, amended,
or modified by any future legislature as to them should seem
proper, &c., but with the express proviso that *the rights of prop-
erty acquired under that act,* or any other act adopting the pro-
visions of that act, should not be taken away or impaired by
any future act.

Now, this company's charter was granted by a special act
passed prior to said general railroad law, and was not granted
agreeably to the provisions thereof, and obviously was not, by
said 35th section, rendered subject to be altered, amended, or
modified by future legislation. Then when we look to the

carefully-worded and far-reaching proviso to that section it is difficult to imagine how language could have been chosen better calculated to repel and preclude the construction contended for. But it is argued that this 35th section refers to property and property rights acquired by the company, but not to privileges and immunities granted by the State to the company. It would seem to be too clear to need argument, that under the very comprehensive language of this company's charter, the right to acquire property and hold the same *exempt from taxation*, makes such exemption a right appurtenant, attached, or belonging to property; or, in other words, is a "right of property," such as is expressly protected by the proviso to said 35th section, and cannot be taken away without the company's consent.

Next comes the act of 1838, by which, among other things, the loan of $150,000 to this company was directed, which loan was accepted. The second section of this act, and the one relied on, provides, that if this company should avail themselves of the benefit of this act, it should be subject to all the provisions of the general railroad law of 1837; and provided further, that any provision or provisions in the act incorporating this company, *inconsistent* with said general railroad law, should be, and were thereby, repealed.

Now, the Richmond and Petersburg Railroad Company did avail themselves of this act of 1838, and did become subject thereby to the provisions of the general railroad law of 1837, in which there is not one word in reference to taxing railroads, and there can, therefore, be nothing in the twenty-second section of this company's charter, exempting it from taxation, *inconsistent* with said general railroad law.

Much reliance is also placed on the act of February 13, 1838, concerning the Winchester and Potomac Railroad Company. By that act the State made a loan to that company,

and authorized the board of public works to borrow the money therefor on certain terms and conditions in the act prescribed; and it was expressly provided that the acceptance of the provisions of that act, by that company, should be upon the condition that the legislature have the right to tax the stock property and profits of said company. There is no such provision in respect to the Richmond and Petersburg company in either of the acts relied on. But it is argued, that by the acceptance of the act of March 30, 1838, the loan to this company having been made under the fourth section thereof, it is said this company at once became subject to the provisions of said act of 13th February, 1838, and liable to taxation. This is clearly a misapprehension of the relations of the two last named acts to each other. The loan to the Richmond and Petersburg company was not made under the fourth section of the act of 1838, but under the third section thereof, and was directed to be paid out of the income of the fund for internal improvement; but out of abundant caution, lest that fund should prove insufficient (which turned out to be the case), it was provided by the said fourth section, that in the event named, the board of public works should borrow the money upon the "same terms and conditions" prescribed in the act concerning the Winchester and Potomac Railroad Company. Clearly, the words "same terms and conditions," found in said fourth section of the act of March 30, 1838, refer to and control the board of public works in negotiating the loan, and have no reference to this company; and, while the money loaned this company was raised under the provisions of said fourth section, that section by no reasonable construction, can be held, under the circumstances, to operate as a relinquishment of the exemption from taxation granted this company in the twenty-second section of its charter. Neither of the acts relied on indicate any purpose on the part of the legislature to

repeal the exemption in question. It would be unjust to impute to the legislature an intention which in terms it seems to have intended to preclude. It is true that since 1860 the general tax laws have not uniformly, as before that time, excepted companies exempted by their charters. In some instances the exception being made, and in others not made, but the language, "every railroad company," &c., being used. That this course by the legislature seems erratic and inconsistent at first blush is true; but as was said by this court in *Warder & Warder* v. *Arell,* 2 Wash. 299, "whatever apparent inconsistences may appear in the declaration of the legislative will, yet it is not decent to presume that they would change their mind upon the subject without saying so in express terms."

In *The State* v. *Winston, supra,* a case strongly in point, it is said: "The reasonable inference always is that when the legislature intends to take away chartered exemptions from taxation they will do it in express terms, and, *eo converso,* where they do not do it in express terms they do not intend to do it." From all these authorities the conclusion is inevitable, that, notwithstanding the omission from the act of 1860 of the words "not exempted by their charters from taxation," the legislature meant to do only what it could lawfully do, and meant precisely the same it did in the former tax laws, and had no intention, by the omission of said words, to repeal the exemption clause in this charter, and certainly did not repeal it. Whenever the legislature has undertaken to repeal the exemption of any railroad from taxation it has done so in express terms, not by indirection. This is illustrated by certain legislation had during the late war, when, pressed by dire necessity, enormous taxes were imposed on every subject of taxation that could be reached, and when taxes were attempted to be imposed on all railroad companies, whether exempted by

their charters or not. See Acts 1861–'2, p. 6, § 13, and Acts 1862–'3, pp. 7–5, § 17. But in these acts the legislature took the precaution to use the language necessary to show that it intended to embrace under the words "every railroad," &c., all railroad companies, whether by their charter exempt or not, so far as the legislature had power to do so. What could have been more idle and absurd than this legislation, if, as contended, the very object had been attained by the previous act of 1860? These acts were measures suggested by the necessities of a great civil war. It is only necessary to say in dismissing them from further consideration that they were never enforced against this company.

It only remains to notice in very few words the joint resolution of April 4, 1877. It is impossible to give to this joint resolution any other force or effect than what its terms import. It does not purport to lay any tax, but is only a legislative construction of the charter of the Richmond and Petersburg Railroad Company, and as such without any binding authority upon this court. It in effect instructs the auditor to assess this company under the then existing law. But with this instruction (a plainly erroneous one) before them, the proper officers took no steps to assert their claim to taxes until this proceeding was commenced in 1883. This delay is significant of the fact, that upon mature consideration it was discovered that the legislative construction, which is the embodiment of this joint resolution, was without foundation. This is all the more conclusive when we reflect that at the very same session, and only a few days after the passage of this joint resolution— to-wit, on 13th March, 1877 (see Acts 1876–'7, p. 138), taxes are imposed only on such railroad companies as *are not exempted by their charters from taxation;* and the law passed at the session of 1883–'4 is to the same effect. Here, then, by the very latest declaration of the legislative will we have in effect a

direct disclaimer of the right to tax this company. However unwise the legislative policy of exemption may have proven, we cannot control it; the law must prevail. We are of opinion that this company's exemption has not been, nor intended to be, repealed. We are of further opinion that the exemption embraces the property and profits of the company, and also the shares of stock of the respective shareholders, and that the same is exempt from taxation—State, county, and municipal. There is no error in the judgment of the court below, and the same must be affirmed.

JUDGMENT AFFIRMED.