## WAYNESVILLE v. SATTERTHWAIT.

(Filed October 18, 1904).

1. STATUTES—*Counties—Municipal Corporations—Highways—Streets —Acts 1903, ch. 375—Acts (Private) 1885, ch. 127.*

> Acts 1903, ch. 375, does not repeal acts (private) 1885, ch. 127, sec. 16, or confer any power on the county commissioners to change or control the streets of the town of Waynesville.

2. STATUTES—*Words and Phrases—Definitions.*

> The word "at," when used to designate a place, may and often must mean "near to."
>
> CLARK, C. J., and MONTGOMERY, J., dissenting.

ACTION by the town of Waynesville and others against S. C. Satterthwait and others, heard by *Judge G. S. Ferguson,* at chambers, in Waynesville, N. C., August 2, 1904.

Appeal by plaintiffs from an order of *Ferguson, Judge,* dissolving a restraining order and refusing an injunction to the hearing. The plaintiff, the town of Waynesville, is situated in Waynesville township, Haywood County. The court-house is located in said town. By the provisions of sec. 16, chap. 127, Private Laws of 1885, being the amended charter of said town, the board of aldermen are empowered to lay off, widen and straighten new streets in the town when in their opinion the same shall be required for the best interest of the town, to make sidewalks, etc. The general powers conferred upon town officers by chap. 62 of The Code are given to said aldermen. The plaintiffs, other than the town of Waynesville, are tax payers, freeholders and residents of the town. By the provisions of chap. 375, Public Laws of 1903, the commissioners of Haywood County are authorized, when the proposition so to do has been approved by the qualified voters of Waynesville township, to issue and sell

bonds of said township to the amount of $50,000 "for the purpose of macadamizing, grading and improving the public roads of said township." By sec. 10 of said act the defendants are appointed a board to be known as "Road Commissioners of Waynesville township," who, by sec. 12, are given "absolute control and management of the public roads of said township and of such as shall be macadamized, graded and improved under the provisions of this act." The defendants are empowered to expend the funds arising from the sale of the bonds so issued for the purpose of "macadamizing, grading and improving the public roads of said township, and to that end they may make contracts."   *   *   * Section 15 provides that "It shall be the duty of said road commissioners to begin improvements at the court-house on the four main roads in said township, to-wit: Pigeon river, Jonathan creek road, Clyde road and Balsam Gap road." The defendants are authorized to enter upon lands near to or adjoining roads improved   *   *   *   for the purpose of getting gravel, timber.   *   *   *   They are also authorized to condemn land as provided by the general road law of Haywood County.

An election was held pursuant to the provisions of the act and the proposition to issue bonds approved. The bonds were issued and sold, and the defendants have in hand a large sum of money for the purpose of executing the provisions of the statute. They made a contract with the defendant, D. L. Boyd, and employed a civil engineer to lay off and fix the grade of the roads.

The plaintiffs allege that the defendants have surveyed and located a road or street in the town of Waynesville about one-half mile in length, beginning at a point near the residence of Howell, on Main street, running thence across certain lots,   *   *   *   to the great damage of the owners of such lots; that the contemplated road is intended to change and

does change the location of a portion of Main street in the town, which change is about to be made by the defendants without the consent and over the protest of the board of aldermen of the town, as well as over the protest of the other plaintiffs and other citizens and tax payers, and without authority of law. They ask that the defendants be enjoined from constructing said road as now located, and from making any substantial change of any portion of Main street in the town.

The defendants admit that they have changed the location of the road leading from the court-house to the town of Clyde, within the corporate limits of the town of Waynesville, and that the change of location commences at the intersection of the two streets at the Presbyterian church. The defendants refer to a map prepared by the civil engineer employed by them. They say that the proposed road is to be twenty-two feet wide, of which ten feet is to be macadamized, and if a greater width is desired the same will be left to the aldermen of the town to be made. They say that the proposed change is to be made with as little damage as possible to property holders, at the same time having due regard to the interest of the public. They say further that the location of the new road will not change the present location, unless the board of aldermen shall see fit to discontinue the use of said street on account of the location of the new road. They admit that they have decided to grade, improve and macadamize the new road and not the old one. They deny that the work is being done against the protest of the board of aldermen, "and while the defendants do not recognize the authority of the board of aldermen to dictate to them the location of said road, they have sought the board of aldermen and endeavored to secure their co-operation in the location of said road." The board of aldermen declined to come to any agreement, and finally, through their attorney, noti-

fied the attorney of the defendants "that they had no authority over the matter and would assume no responsibility in the location or change of location of said road." The defendants say that they are vested with the power to make the change in the location of the road, or at least to establish a new road for the purpose of improving and macadamizing the same, as road commissioners aforesaid, under the provisions of the Act of 1903. They admit that the property of the plaintiff tax payers will not be so valuable as it would be if the defendants should grade, improve and macadamize the old road, and they express regret that the grade of the old road is such as to make the change necessary. They proceed to set forth the conditions, grade, etc., which in their opinion make it necessary to change the location. They set forth many other facts in justification of the proposed change. *Judge Moore* granted a restraining order, and upon the hearing before *Judge Ferguson* the order was vacated and an injunction to the hearing refused. The plaintiffs excepted and appealed.

*W. B. & H. R. Ferguson* and *W. L. Norwood,* for the plaintiffs.
*George H. Smathers,* for the defendants.

CONNOR, J. His Honor, *Judge Ferguson,* in the judgment rendered by him finds that by the charter of the town of Waynesville the board of aldermen are "entrusted with the right and.power of altering and improving the streets of said town and of laying out and establishing new streets. * * * And the exercise of this power is solely in the board of aldermen, and the town solely liable for damages resulting from its exercise, except as the same shall be modified by the act of the Legislature, Acts 1903, ch. 375." He says: "I am of the opinion that the Legislature had the power to grant to the .defendants, the road commissioners of

Waynesville township, the right and power to enter the corporate limits of the town and make the improvements specified in said act." In the view which we take of the case, it is not necessary to express an opinion upon the power of the Legislature to confer upon a board of commissioners, or other agency, composed of persons not required to be residents of the town, the power to enter its corporate limits and re-locate streets or open public roads therein. This is a delicate question, and we should be slow to find, unless clearly expressed, an intention on the part of the Legislature to confer such power. While this Court has recognized and enforced the power of town commissioners to control, widen and straighten streets as in their judgment the public good and convenience may require, it has also recognized the limitations upon such power when the vested rights of the citizen and property owner were affected. *Hughes v. Clark,* 134 N. C., 457. Next to the public health there are few, if any, matters of municipal control which affect more seriously the welfare of cities and towns, or, when interfered with, create more friction than the streets and sidewalks. Any divided control or authority in regard to them must necessarily result in conflict and confusion. The courts will always endeavor to ascertain the intention of the Legislature by a careful examination of the statute and its several parts, taking into consideration the purpose and scope of the legislation, the present status of the subject matter, and the rights and interests affected. They will also endeavor to so construe the act that no conflict with existing statutes occur further than is expressly or by necessary implication made necessary. The courts will never bring into question the power of the Legislature until they find no other reasonable way of deciding the question presented. *Madre v. Felton,* 61 N. C., 279.

The question presented by this record to be first considered is whether the Legislature has by the Act of 1903 conferred upon the defendant commissioners the "absolute control" of any of the streets in the town of Waynesville. If such is the effect of the statute, it must, in respect to such streets, repeal by implication section 16 of the charter. Certainly the board of aldermen and the defendant commissioners cannot at the same time have and exercise "absolute control" of the same street. It is manifest that there is no express repeal of the charter or any of its provisions. The Act of 1903 makes no reference to the charter or to the town or its officers. If repealed, it must be by implication. While it is well settled that the Court will construe later acts to repeal former ones by implication in well-defined cases, it is equally true that the law does not favor the implied repeal of statutes. *Nash, J.,* in *State v. Woodside,* 31 N. C., 497, says: "The law does not favor these implied revocations, nor is it to be allowed unless the repugnancy be plain, and where in the latter act there is no clause of *non obstante* it shall, if possible, have such construction that it shall not operate a repeal." Endlich on Int. Stats., sec. 280; Sutherland on Const. Stats., secs. 126, 127. There is a further rule stated by *Judge Dillon:* "It is a principle of extensive operation that affirmative statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities." Dillon Mun. Corp., 143. In *Comrs. v. Railroad Co.,* 81 Va., 355, it is said: "The principles applicable to the repeal of statutes by implication are few and simple. The general rule laid down in Gregory's case, 6 Coke, 19b, and so far as known universally accepted as correct, is that a 'later statute in the affirmative shall not take away a former act and *eo potius* if the former be particular and the latter general.'" And it is said that rule is enforced more rigidly when the attempt is made by a later

general law to repeal the provisions of a prior special charter than in any other cases. *Brown v. Comrs.,* 21 Pa., 43.

Guided by these well-settled principles, we proceed to inquire whether an act which by its title and terms prescribes a scheme for improving the *public roads* of a township, should be construed to apply to the public *streets* of an incorporated town, and by implication take the power from the constituted authorities of one and confer it upon the former. It is also a well-settled rule of statutory construction that "the courts approach the interpretation of a statute with the presumption that words and phrases therein are used in their familiar and popular sense and without any forced, subtle or technical construction to limit or extend their meaning." 26 Am. & Eng., Ency., 635.

There is a marked distinction, both in common use and in statutory enactment, between a public road and a public street. We have at every session of the General Assembly acts providing for the improvement of the public roads, while invariably the charters of towns and cities confer the power upon commissioners or aldermen to open and control streets. *Judge Elliott* says that "Rural highways may, we think, be appropriately and conveniently denominated roads, and the public ways of a town or city may be properly and conveniently called streets." Elliott on Streets, sec. 7. "A street is a road or public way in a city, town or village." He says that while all streets are highways, all highways are not streets; that the rights of the public are much greater in streets than in roads in the rural districts, and the methods of regulating their use, improvement and repair are materially different. This Court, in *Osborn v. Comrs.,* 82 N. C., 400, has clearly recognized the distinction between public roads and streets. The General Assembly passed an act providing a system for working the public roads of Mecklenburg and other counties. The commission-

ers were empowered to divide the county into road districts. The commissioners of Mecklenburg under this power laid off as one district the city of Charlotte, and undertook to take control of the streets, declaring them to be public roads. Upon an application to enjoin them this Court said: "In our opinion incorporated cities and towns whose charters make provision for the repair of streets are not included, nor intended to be included, in an act to regulate roads and highways, and they are still left in possession of their chartered rights and privileges in this regard." The learned *Chief Justice* notes the language of the city charter and proceeds to say: "The conflict between them is avoided by a construction of the act which confines its operation to parts of the county in which roads, as distinguished from streets, are to be found." The defendant commissioners were enjoined from interfering with the streets. The same construction was given a similar statute by the Court in Illinois. In *Ottawa v. Walker,* 21 Ill., 605, 71 Am. Dec., 121, speaking of the power to control the streets vested in the town authorities, it is said: "The power in its very nature would seem to be inconsistent with its joint or concurrent exercise by the two bodies, and even if the city charter was not subsequent in date, unless it plainly appeared from the language employed that it was intended to be joint or concurrent, it would be held that the power was exclusive in the commissioners beyond the city limits, and exclusive in the common council within their jurisdictional limits, and neither have any power to perform any acts in reference to this subject beyond their respective limits. * * * The exercise of such a power by each of these bodies would necessarily lead to endless strife and confusion which the Legislature never could have intended to produce by those provisions." *People v. Railroad Co.,* 118 Ill., 520. In *State v. Jones,* 18 Texas, 874, it is said: "Both cannot exercise it at the same

time without producing a conflict which would be irreconcilable, and which might be extremely detrimental to the interests of the town." *State v. Frazier,* 98 Mo., 426. In *Cross v. Mayor,* 18 N. J. Eq., 305, the *Chancellor* says: "But it has never seemed to me a matter susceptible of doubt that in case a city charter contains a special provision putting the streets in charge of the officers of the corporation, such provision excludes the common scheme for constructing and keeping up highways in the townships and all its concomitant regulations. In conformity with the well-known rule of law, the general legislation on the subject gives way to the special legislation on the same subject." The question has been expressly passed upon in *State v. Mayor,* 33 N. J. Law, 57. Referring to the argument made by the prosecution the Court says: "The argument is entitled to much force as applicable to incorporated places, when the charter is silent on the subject of the power of municipal authorities to regulate the streets. But when the charter of a city or town expressly vests the regulation and control of the streets and highways in the corporation the argument is entitled to no weight. The question is not whether the Legislature may legislate within the limits of a municipal corporation, but whether general laws shall have controlling effect when the Legislature has expressly delegated to the corporation special authority to legislate on the subject by the adoption of municipal ordinances."

In the light of these authorities and the reason of the thing, we conclude that the Act of 1903 should not be so construed as to repeal section 16 of the charter or to confer any power on the defendant commissioners to change, alter or otherwise control any of the streets in the town of Waynesville.

It is urged that section 18 of chapter 375 of the Acts of 1903, expressly provides that the defendant board shall "be-

gin improvements at the court-house on the four main roads in said township," and that the language confers express power to take absolute control of the roads. It is said that this language is incapable of any other meaning or construction than that contended for by the defendants. The map which has been filed as a part of the record shows that the court-house is located on Main street, and that the highways within the corporate limits are streets, laid off and designated by name; that no such roads as those named in the act converge at the court-house. It is true that the roads named come into the streets at the boundary of the town, and, by following the streets as they make into Main street, reach the court-house. It would be impossible to begin the work on the four roads named, "at the court-house." The language of the statute may be sustained and given effect by beginning work on the roads at the boundary of the corporation leading to the court-house, and in this way repugnancy and conflict avoided. The argument that the language is to be given a literal construction proves too much, because if they cannot begin at the court-house it would show a want of power to work the roads named at all, which would destroy the evident purpose of the Act of 1903. The word "at," when used to designate a place, may, and often must mean, "near to." It is less definite than "in" or "on"; at the house may be in or near the house." Web. Inter. Dic., 95; Cent. Dic., Vol. I.

Read in the light of the existing conditions and the context and giving effect to the act without conflicting with the charter, a reasonable construction of the language would empower the defendants to begin work on the roads named at the point where they reached the town boundary and where they merge into the street. In this way the apparent repugnancy of the charter and the Act of 1903 is reconciled. It is by no means clear from the language of the Act of 1903

that the defendants are empowered to change the location of the road, and certainly not to change the location of a street; but we do not wish to decide any more than is fairly presented by the record.

The injunction prayed for and granted by *Judge Moore* is that the defendants be "restrained from constructing the said road as now surveyed and from making any substantial change in Main street in said town of Waynesville." We decide nothing more than that the plaintiff, the town of Waynesville, by its aldermen having control of its streets is entitled to this relief.

We do not undertake to say or suggest that the proposed change is not advisable or that it is an abuse of power. We simply decide that under the statute no such power is given to the defendants.

It is said that the bonds issued were voted by the people of the township, including the citizens of the town, who pay a large part of the tax, and that the town should receive some of the benefits therefrom. We appreciate the force of this view. Whether this can be secured by co-operation by the board of aldermen and the defendant commissioners is not before us, nor do we intimate any opinion thereon.

We are of the opinion that the restraining order granted by *Judge Moore* should have been continued and the injunction granted as prayed for.

To the suggestion that the town of Waynesville is not one of the real plaintiffs, and that the question discussed and cited is not presented, it is sufficient to say that we are compelled to decide this, as we do all other cases which come before us, upon the record. The case was argued before us by counsel representing the *plaintiffs,* and many of the authorities cited in this opinion were cited and relied upon in his brief. His contention was, as we have decided, that the Act of 1903 did not by implication repeal the town charter and

that the aldermen had absolute control of the streets of Waynesville. The map of the town shows that the highways therein are *streets,* laid off and named. It may be that all parties will find it conducive to the best interest of the township and the town to co-operate in carrying out the purpose of the Act of 1903. This is not for us to determine or direct.

Let this be certified.

Error.

DOUGLAS, J., concurring. I concur in the opinion of the Court as written by *Justice Connor,* on the ground that it does not appear to me that the Legislature intended to create a divided sovereignty, or *imperium in imperio,* within the town of Waynesville. My opinion is based entirely upon the intention of the Legislature, and not upon its power. A different interpretation might raise serious constitutional questions. The power of the Legislature to grant charters to cities and towns, and to modify or repeal them at its pleasure, within constitutional limitations, is not questioned; but to what extent it can directly interfere in their management and control, is another and more doubtful question. While concurring in the opinion of the Court, not only in what it says but also in its wisely refraining from discussing questions whose determination is not necessary to the decision of this case, I am nevertheless impressed with the suggestive nature of the opinion of the *Chief Justice.* Speaking solely for myself in a concurring opinion, I may go further and express my personal views. It seems to me that the town of Waynesville is a proper party to this case, and is actually and in good faith asserting its right to the location and improvement of its streets. But if it were a mere nominal party, what difference would it make? If the road commissioners of Waynesville township have *no power* to open new

streets within the limits of the town, I see no reason why they cannot be enjoined by any one who would be injured thereby.  Here the private right of the citizen would apparently end.  I see no ground on which either he or the town itself would be entitled to a *mandamus* to compel the township commissioners to macadamize any of the existing streets; certainly not under the facts shown in this case. The Legislature evidently intended a part of the fund to be spent within the corporate limits, and probably expected that it could and would be done by the concurrent and harmonious action of both boards.  The unexpected dispute destroyed only in part the effective operation of the act, which otherwise remains in full force and effect.  There is no reason why the township board should not proceed to improve the roads outside the town limits, reserving perhaps sufficient funds for the improvement of the road within the town when its location is finally determined  While they cannot control the town authorities, they are equally independent in the exercise of their own duties, privileges and powers.  There is no apparent reason why the two boards could not, acting concurrently, open and improve the new street as proposed. It is not proposed to close up any part of the old street, or to deprive its abutting owners of any of the rights or conveniences they now enjoy.  This is all they can demand. They have a right to have the old street kept open .as far as it is necessary to the reasonable enjoyment of their property, and to have it kept in proper repair as a public highway.  This would be a continuing duty of the town commissioners, and for failure in its performance they would be indictable under *State v. Dickson,* 124 N. C., 871.  As was said in that case: "What is proper repair would depend largely upon circumstances, such as the size of the town and its available funds, the character and location of the streets, and the amount of travel thereon."  I am not aware of

either statute or decision entitling an abutting owner to have his street paved or macadamized to the conclusion of others. If the public interest, on account either of convenience or economy, requires the opening of a new street, then it should be opened, but by the proper authority.

It is true that the opening of new streets often disturbs the *relative* values of property, but this cannot be avoided, and it is never a legal injury if done in good faith and for a public purpose. Of course, if the town authorities were to use the public moneys merely under a colorable pretense of public necessity, but in fact to subserve some private interest, they could be enjoined, if indeed they did not become criminally as well as civilly liable. There is no intimation of any such purpose in the case at bar. On the contrary, the undisputed testimony tends to show that the new street was located in good faith and in furtherance of the public interest and convenience. A city can no more be confined to its village streets than a man to the clothing of his infancy. As it grows it expands, and needs new and more convenient lines of communication. The country road, originally its principal and perhaps its only street, becomes inadequate to the needs of its growing population; and is rarely susceptible of substantial improvement. It cannot be abandoned, but neither can it be justly given a fictitious value at the expense of the general public.

CLARK, C. J., dissenting. I concur with *Judge Ferguson* that "the Legislature had the power to grant to the defendants, the road commissioners of Waynesville township, the right and power to enter the corporate limits of the town and make the improvements specified in said act." No town has any powers except those conferred by the charter and other statutes, and these are subject to modification and even entire repeal at the will of the Legislature. This last

was done notably by the acts abolishing the cities of Memphis, Tennessee, and Fayetteville, N. C., which were held constitutional. Even counties may be abolished at the will of the Legislature. *Mills v. Williams,* 33 N. C., 558. This act (Acts 1903, chap. 375) provides in section 15 that "It shall be the duty of said road commissioners to begin improvements at the court-house on the four main roads in said township, to-wit: Pigeon river road, Jonathan creek road, Clyde road and Balsam Gap road." This statute says the work must begin at the court-house on the four main roads named, and necessarily it must be where the four roads come together, as they must do, at the court-house, if, as the act says, they all begin there.

There is no complaint in this record by any one that the road commissioners are macadamizing and working that part of these roads, which, so far as they lie within the town, are called streets. This is not in the scope of this action nor contemplated by the plaintiffs. The tenor of this action is that at a certain point on the street which the plaintiffs, Howell, Martin and Thomas (who are the sole real plaintiffs), claim should be a part of the Clyde road, the defendant road commissioners have changed the road and are not macadamizing the street in front of their property as part of such road, and their sole equity to the injunction is that the failure to adopt and macadamize the street in front of their property as part of said road will impair its value. The parties on whose property the new road is laid out are not complaining. The town is a nominal co-plaintiff and is not complaining that four of its streets, nor this one, are being macadamized at the expense of the township, and notified the defendants, when asked to join them, that the town authorities "had no authority over the matter and would assume no responsibility in the location or change of location of said road." The position of the road commissioners is that while they

are required to work the four roads named "beginning at the court-house," they are expressly given authority to change the location of the road (not of the street) at any point between the court-house and Clyde, and that they find that to adopt the street as a part of the road at the point where the complainant's property lies would require the public for all time to come to climb a 9 per cent. grade and an expenditure by them of $6,000, while selecting the new route which they have chosen (to which the owners of the property over which it will run are not objecting) the grade will be reduced to 5 per cent. and a cost of $3,000, both of which are plainly left in their discretion by the terms of the act, and show a wise exercise of their discretion. The defendants in their answer disclaim any intention to change the street in front of the plaintiffs' property or close it up or to exercise any control over it. They simply decline to adopt that part of the street as a part of the road. The contention of the plaintiffs is not that the defendants are exercising authority over the street in front of them, but that they are not, and have chosen another location for their road. They prefer that $6,000 should be spent where it will improve the value of their property, ignoring the fact that there will be a saving to the public of an expenditure of $3,000 and of 4 per cent. in the grade by locating the road where the commissioners, in the exercise of the discretion vested in them by the statute, have wisely seen fit to locate it instead of upon the steeper and more expensive street in front of the plaintiffs' property. The sole object of the injunction asked is to prevent the road commissioners locating the road elsewhere, and thus to force them in spite of the discretion vested in them by the statute to macadamize and grade that part of the street in front of the plaintiffs' property as a part of the public road to Clyde. It would seem that the Judge below properly refused them an injunction to aid them in such purpose.

136——16

The defendants in their answer having intimated that they might use their discretion by not macadamizing steep parts of streets in the town, if compelled to adopt them as parts of the public roads, in an affidavit filed for the plaintiffs, in reply, they assert an intention and the right to procure a *mandamus* in such event to compel the working of such parts of the streets by the defendants. Such is the purport and object of this litigation as set out in the record. There is no contention therein by any one that the defendants have no power to macadamize the streets in the town, so far as they are parts of the four roads named, up to the court-house.

Waynesville is not only an incorporated town but it is a county seat, and the four roads leading to the court-house are perhaps more used by citizens from the different parts of the county than by those of the town. In placing the cost of macadamizing those four roads "beginning at the court-house" upon the larger public, the act has only required what is done in Washington, London, Paris and other cities in which the cost of certain improvements are defrayed by the larger public under officials appointed by it, though the local public have the same ·use of them. In the same way, in Raleigh, the sidewalks and parts of the streets around the Capitol Square and Executive Mansion, and indeed in front of the very building in which this Court sits, are graded and paved at the expense of the State and by its officials. Requiring the same as to the four public roads of Waynesville has not been and could not be complained of by that town, nor even by these plaintiffs. The point presented by them is, as above stated, an entirely different question.

MONTGOMERY, J. I concur in the dissenting opinion.