Tompkins, J.,
delivered the opinion of the Court.
Fenton brought his action against Perkins before a Justice of the Peace, and had judgment for seventy-five dollars. Perkins appealed to the Circuit Court where the judgment of the Justice was reversed. On the trial it was proved that Fenton sold a horse to Perkins for two notes, one of Perkins’ himself for $5, the other a note of John McMickle for $75. The note of McMickle at the time of making the contract, was at the defendant’s house, and he agreed to deposit it at Dr. Bennet’s in Columbia for the plaintiff. A note was accordingly deposited for Fenton, which ho refused to receive, alledging that it was not such a note as he had contracted for. He said that he had contracted for a note on John McMickle, and that the note delivered to him was subscribed John Mickle. Testimony was introduced to prove that Fen-ton knew that the note left at Dr. Bennet’s for him, was the same for which he had contracted. ' Evidence of the value of the horse was given. It varied from twenty to forty dollars. The defendant was allowed to give evidence to the jury, that he had offered to restore the horse to the plaintiff, if the plaintiff would restore the defendant’s note. The instructions prayed for by the plaintiff, were substantially as follow: First, that if Perkins and Fenton understood the contract differently, the jury must be governed by the fair and plain understanding of the evidence, i. e. must give to the evidence of the contract, a plain common sense construction. Second, that if the jury believed that Fenton contracted for a note of John McMickle, and that the note which had been delivered, did not agree with that description, then they must find for the plaintiff, he having aright to receive a note executed by John Mc-Mickle, subscribed with his name in a legible manner. Third, that if Fenton contracted for a note for $75, that the value of such note, and not the value of the horse, after deducting therefrom Perkins’ note for $5, was the true measure of damages. These instructions were refused and others given. The following are the instructions given by the Court: First, that in the construction of contracts, the understanding of the parties is to be given, and that understanding is to be collected from the cir- *19 cunlstances attending the transaction. Second, that in this case the judgment of the Justice of the Peace was glaringly wrong, it being for $75 5 that the measure of damages in this case, is the value of the horse at the time of the trade and interest thereon by way of damages, after deducting the note for $5. Third, that the mistake in the signature oí the note, did not avoid the note if they believed the note was executed, and delivered by John McMickle, and that the Me was omitted by fraud or mistake. Fourth, that if they believed that both parties knew they were contracting for the note which was left at Dr. Bennet’s, that said note satisfied the contract, although they may have called it by a wrong name. To the instructions thus given, the plaintiff excepted. He also excepted to the opinion of the Court in allowing evidence to be given of an offer made by the defendant to restore the horse. The first instruction given by the Court, was in itself very correct; but it does not correspond with that requested. Perkins had received Fenton’s horse, and Fenton had received his note for five dollars, and there was a conversation about the delivery of another note. But it seems there is a difference of opinion, (and possibly a difference of opinion between the parties,) about the particulars of this conversation. It is then the duty and particular province of the jury, to ascertain from the evidence the particulars of such conversation, and by giving to them a plain and fair construction, to ascertain what a man of common sense would have judged to he the agreement of the parties, without regard to the opinions and belief, or to the pretended opinions of the one party or the other. It is the opinion of the Court that the first instruction prayed for was proper to be given, and that it was not given. The second instruction given by the Court, was in itself a denial of the third asked by the plaintiff. By it the value of the horse is made the measure of damages. The case of Crews v. Dabney, 1 Littell 278, which was most relied on by the defendant, was a case of an executed contract; and the part of this contract about which there is doubt, and which caused the suit now in Court, is plainly executory. Dabney had sold to Crews, two watches for a note of $40, made by one Williams, represented to be temporarily absent on a visit. Dabney sued Crews, and charged in his declaration that Crews well knew at the time he made said representation, that Williams had removed from the State not to return. The inferior Court decided that the amount of the note was the measure of damages. Crews appealed, and the judgment of the inferior Court was reversed. Dabney had received the note for his watches, and could not recover the amount from the maker, and sued Crews, charging the fraud. He then goes to rescind the contract. In the case before the Court, the plaintiff' had not received the note, which was promised as part of the consideration for the horse received by the defendant in exchange; but now sues for it, and if he have a right to demand and receive a note for seventy-five dollars, we must suppose the maker solvent, and that the note is worth what it purports to be. The plaintiff then having a right to demand and receive such note, the sum it purports to be worth, ought to be the measure of the damages which he can recover. Strange confusion would be introduced into the commercial world if every person, who had contracted to deliver property at a future day in exchange for property delivered to him in pre-sentí, were allowed to measure the damages he should pay for a failure to deliver, by the value of the property which he had already received. The second instruction given hy the Court, we think, is improper, and the third asked by the plaintiff should have been given. The third instruction given by the Court, does not seem to be required by any testimony on the record, and therefore wrong. The fourth, though not *20 asked for, is very proper. These two seem to be intended as a compliance with the second prayed for by the plaintiff. But we think that they are not equivalent, and that the second instruction asked for by the plaintiff, should have been given along with the fourth instruction given by the Court y for the second instruction prayed by the plaintiff, might mislead a jury, unless it were accompanied by the fourth, given by the Circuit Court. The Court erred too, we think, in permitting the defendant to give evidence of an offer to return the plaintiff’s horse, if the plaintiff would return his note for five dollars. The admission of such evidence would.be to permit the party to make evidence of his own honest intentions, to induce the jury to assess lower damages : or it might mislead the jury, by inducing them to. believe that the defendant had a right to rescind the contract. Eut it is contended that under the instructions given by the Court, the jury could not have found for the defendant, unless they believed that Fenton had agreed to receivethe same note which had been deposited for him at Dr. Bennet’s, and that it were executed by John MeMickle, though not subscribed with his name. The Court instructed the jury, that the value of the horse, the note for $5 which Fenton had received being deducted, was the measure of the plaintiff’s damages. Might not the jury have believed the horse to be worth no more than five dollars ? In such case they should have found foj'the defendant under that instruction of the Court. Although it is not probable, they believed the horse to be worth no more than five dollars, yet it is possible 5 and if possible, we cannot affirm the judgment. The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings in conformity with this opinion!