# APRIL TERM, 1894.

LEWIS M. CUTCHEON ET AL. V. DANIEL E. CORBITT
ET AL.

[See 79 Mich. 41; 88 Id. 594.]

*Fraudulent conveyances—Trustee—Accounting.*

The contention of the defendant Corbitt that, under the former
decision in this case, he should be charged on the accounting
there ordered with what he had received only from the
assigned property, is sustained. And it is held that, while it
is true that the complainants have not technically estopped
themselves from taking and subjecting to the payment of
their demand any equity which the assignors may have in the
assigned property, and while, also, any specific article which
the defendant Corbitt may, by any gross neglect of duty on
his part, have lost, may be properly charged to him, this
should be the limit of his liability, he having acted in good
faith, and with the acquiescence of the complainants.

Appeal from Kent. (Grove, J.) Argued October 3,
1893. Decided April 6, 1894.

Bill in aid of execution. Complainants appeal from a
decree on accounting. Decree modified. The facts are
stated in the opinion.

*Francis A. Stace* (*Byron M. Cutcheon,* of counsel), for
complainants.

*Daniel E. Corbitt, in pro. per.*

MONTGOMERY, J. The bill in this case is filed in aid of execution. The case was before the Court at the October term in 1891, and an interlocutory decree entered for the complainants, and the case remanded for an accounting. The decision of this Court is reported in 88 Mich., at page 595. On the former hearing in the court below, it was found that the transfer of the property in question was made in good faith, for the purpose of paying creditors, and saving something from the property for Buchanan & Mizner. This Court decided that there was no evidence of any actual intent on the part of defendant Corbitt to defraud; that the effect of the transaction was, however, to hinder and delay creditors; that the conduct of the creditors in waiting several years, with knowledge of the facts, before taking action, had an important bearing in determining the equities of the parties, but that such creditors were not estopped by the delay; and, finally, that it would be inequitable to require defendant Corbitt to turn over property which he had paid for with his own money, and that it would be alike inequitable to permit Corbitt to make any profit out of the transaction, but that it was equitable that he should turn over to complainants whatever interest Buchanan & Mizner had in the property, and that the amount should be ascertained by an accounting, charging Corbitt with whatever he had received from the property turned over to him, and crediting him with what he had in good faith expended. An accounting has been had before a circuit court commissioner, and reviewed by the circuit court in chancery, and, from the determination on this accounting, an appeal has been taken to this Court.

The commissioner made up his report by charging to defendant Corbitt the value of the property which came into his hands as assignee, and deducting the sum of $5,296.75 for depreciation, and on account of property levied upon and sold by creditors of Buchanan & Mizner,

and also by crediting Corbitt with disbursements amounting to $9,093.67, and found that there remained in Corbitt's hands, unaccounted for, $2,410.34. The commissioner also found that defendant Corbitt had in fact received in cash but $6,807.64. The complainants excepted to this finding as to the amount of receipts, and also to the finding as to the amount of disbursements. The exceptions were in due form, and need not be here set out. Defendant Corbitt also excepted to that portion of the commissioner's report charging him with the value of property as estimated, contending that, under the former decision of this Court, he was to be charged with what he had received only. The contention was allowed by the circuit judge, and we think properly. The complainants, while aware that Corbitt was acting as trustee, allowed him to proceed and dispose of the property without objection; and, while it is true that they have not technically estopped themselves from taking and subjecting to the payment of their demand any equity which Buchanan & Mizner may have in the property, and while, also, any specific article which defendant Corbitt may, by any gross neglect of duty, have lost, may be properly charged to him, this should be the limit of his liability, he having acted in good faith, and with the acquiescence of the complainants.

The circuit judge found the amount of receipts by approving that portion of the commissioner's report fixing the amount received for lumber, shingles, wood, and slabs at $6,481.68. To this were added teams, wagons, harness, etc., at $700; the value of lot 8, in Leonard & Co.'s addition, $800; logs at Grand Rapids, $75; logs bought of Carr & Co., $231.93; lumber bought of Brown & Co., $121.68; lumber bought of Mizner, $68.19; cash in bank, $25; cash of Cutcheon for sawing, $254.46; cash for team work, $46.50,—making a total of $8,804.44. But he found that

there should be deducted from this sum $650, consisting of team, harness, wagon, etc., sold and paid for in labor, and the amount of the Giddings note, paid in lumber. This latter allowance of the circuit judge results, as we conclude, from a misapprehension. The deduction made by the commissioner was from the amount of lumber on hand, and in stating the account by charging Mr. Corbitt with the value of the lumber. But in the process adopted by the circuit judge there is no propriety in deducting the item. The accounting by the circuit judge charges Mr. Corbitt with the actual receipts of cash, and, as this note was not paid in cash, but in lumber which he had over and above the amount sold for cash, plainly the amount received should not be reduced by this sum. Mr. Corbitt recognizes this in his testimony, although he does not agree with the witness Giddings as to the amount paid in lumber. He testified that there was about $100 paid in lumber, and in answer to the question, "Was that lumber credited as cash?" he said, "No; that amount ought to be credited, but $100 of that ought to be credited as cash." Mr. Giddings testified that the whole $300 was paid in lumber, and both the commissioner and the circuit judge so found. But the error occurred in deducting this amount from the cash sales of lumber, when the item for lumber sold did not include this $300. This item should not have been deducted. But, upon the basis of charging Mr. Corbitt with the actual receipts, the items of logs at Grand Rapids, logs bought of Carr & Co., lumber bought of Brown & Co., and lumber bought of Mizner should have been deducted. These items amount to $496.80, leaving the net sum chargeable upon the items dealt with by the circuit judge, $7,957.64. The circuit judge found the defendant's disbursements to aggregate $9,293.67. This was made by adding, to the amount reported by the commissioner, $200 paid Toman. But a careful examination of the record, and

particularly of the account of disbursements filed by defendant, satisfies us that this item of $200 was included in the item reported by the commissioner under the head of "Paid for lumber, $398.55." This still leaves a balance in favor of Corbitt of $1,136.03; and, unless some of the exceptions taken to the findings of the circuit judge prevail, it is apparent that Buchanan & Mizner have no equity in lot 8 which is subject to be reached by the complainants' executions.

But we are satisfied that some of the exceptions should be allowed. It will be observed that in making up the account the circuit judge charges lot 8 to defendant Corbitt, as if he had taken this in settlement with Buchanan & Mizner for the money advanced. This would not be inequitable if there is sufficient balance in favor of Corbitt. But it is to be noticed that this lot is charged to him at $800. The account shows, however, that Corbitt is allowed, on account of payments made on lot 8, $1,245.40. He should therefore be charged an additional sum, on account of this lot, of $445.40. We are also satisfied that defendant received, on account of shingles sold and not credited, $107, and, on account of team work, $60. A careful examination of Mr. Corbitt's account of money received demonstrates that a considerable amount of lumber, known as the "Crapo lumber," was not credited in his account. Ten car-loads of this lumber were sold to the Kent Furniture Company. Four car-loads of this are accounted for, but the remaining six car-loads we are satisfied were omitted from the account. The amount of this is $483.74. There are four other car-loads of the Crapo lumber, for which we are unable to find any corresponding credits, and the omission is not satisfactorily explained. We have been unable to find any credits in the rendered account corresponding to these items. While there is some uncertainty as to the items, we think the weight of testimony and

just inference are in favor of complainants' contention that they were not accounted for. A just allowance for these four car-loads, upon the best basis which we can adopt, is $365.44. The circuit judge credited back to Corbitt the item, "Team, harness, wagon, etc., sold and paid for in labor," at the sum of $350. We are not satisfied that this item should have been allowed as a credit to Mr. Corbitt. Even though Mr. Corbitt may have acted in good faith, this property, according to his own testimony, was turned over to him to pay the debts of Buchanan & Mizner. He was in a position to know of their insolvency, and, knowing it, turned back into the hands of one of the partners this item, upon their agreement to pay in labor, and receiving a note which the witness Mizner testified it was understood should be lost. Whether this be true or not, it was known to be worthless, and we think defendant Corbitt should be charged with the property, and credited only with such an amount as he actually realized in work. This was, as near as we can ascertain, $136.75, and he should be charged the difference between the property and the amount so received, being $213.25; making a total of charges to be added to the items covered in the findings of the circuit judge of $1,674.83, showing that Buchanan & Mizner have an equity in the lot in question amounting to $538.-80, together with interest at 6 per cent. from the date of the filing of the bill. The complainants are also entitled to recover costs of both courts. Unless the defendant shall pay to the complainants the amount above stated, with costs, within 30 days from the date of this decree, the complainants may proceed to a sale of the property, and of the avails retain the sum aforesaid; the balance to be paid into court, to be paid out on order of defendant Corbitt.

The other Justices concurred.