# I. W. COUNTS, Appellant, v. O. H. MEDLEY, Respondent.

Springfield Court of Appeals, April 1, 1912.    Motion .for Rehearing Overruled, May 8, 1912.

1. **VENDOR AND PURCHASER: Sale of Business: Agreement Not to Engage in Competing Business: Construction of Contract.** In an action to enjoin the defendant from conducting a produce business at H, it appeared that the defendant had sold to the plaintiff his produce business at R, under a contract whereby he agreed not to engage in the produce business at R for a term of five years. Both towns are unincorporated and H is located about one and a half miles north of R. The agreed statement of facts is examined and *held* from the nature of the business and the manner in which it is conducted the words "at R" should be construed to mean near or about and that the defendant in conducting the produce business at H was violating the terms of his contract with plaintiff. NIXON, P. J., dissents, and *holds* that by conducting the produce business at H the defendant was not violating his agreement not to engage in such business at R.

2. **WORDS AND PHRASES: Meaning of "At:" Construction of Contract.** The word "at" primarily expresses the relation of presence or nearness in place. It is less definite than "in" or "on" and is commonly used as the equivalent of "near" or "about." Its significance is generally controlled by the context and attending circumstances denoting the precise sense in which it is used.

3. **VENDOR AND PURCHASER: Sale of Business: Sale of Good Will: Agreement Not to Engage in Competing Business.** While the general rule is that in the absence of an expressed agreement the sale of a mercantile business, together with the good will thereof, does not impose an agreement by the vendor not to again engage in a competing business, yet where the vendor expressly agrees not to engage in the same business at the same place for a specific time or so long as the buyer continues in business, the obvious intention is to sell the good will of the business.

4. **CONTRACTS: Construction: Harsh Terms: Where Meaning is Clear.** Where the language of the contract is clear the contract is obligatory on the parties, though the consequences

may be harsh and the stipulations contrary to the mode in which men ordinarily bind themselves by such contracts.

5. ———: ———: **Where Meaning is Doubtful: Surrounding Circumstances.** Where the terms of a contract are doubtful or have a double meaning the situation of the parties in respect to the subject-matter of the contract, the surrounding circumstances, the usages of the business and the purpose to be accomplished are all matters of consideration in arriving at the true construction of the instrument.

6. ———: ———: ———: **Common Sense: Not to Give Unfair Advantage.** Common sense and good faith are the leading characteristics of all interpretations of contracts and where there is room for construction a contract should not be interpreted so as to give an unfair advantage to one of the parties over the other.

7. ———: ———: **Understanding of Promisee.** The promisor in a contract is bound according to the sense in which he apprehended that the promisee received his proposition.

8. **VENDOR AND PURCHASER: Sale of Business: Agreement Not to Engage in Competing Business: Purchasing Similar Business: Injunction.** Defendant sold his produce business at R to the plaintiff and agreed not to engage in the produce business at R for the term of five years. About a month later defendant purchased a country store at H, about one and a half miles north of R. R was a shipping point and the produce business at R included the buying and shipping of produce from an extended territory. *Held*, under the agreed facts that in buying produce for the purpose of shipping defendant violated his contract with the plaintiff, but inasmuch as the person from whom defendant purchased the store at H was also a dealer in produce to the extent that he purchased the same and re-sold for the purpose of shipping and for local customers for consumption, that in so far as the defendant limits his dealings in produce to that purpose, he is not violating his contract. NIXON, P. J., dissents, and *holds* that under the evidence defendant did not violate his contract at all in engaging in the produce business at H.

Appeal from Webster Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED AND REMANDED (*with directions*).

*I. V. McPherson, R. S. Phillips, J. A. Potter* for appellant.

(1) The word "at" is a word of somewhat indefinite meaning whose significance is generally controlled by the context and attending circumstances denoting the sense in which it is used. Used in reference to place it often means in or within, but its primary idea is nearness or proximity and it is commonly used as the equivalent of near or about. Waynesville v. Satterhwait, 136 N. C. 226, 48 S. E. 661; 4 Cyc. 365; O'Connor v. Nadel, 117 Ala. 595, 23 So. 632; Ray v. State, 50 Ala. 172; Rogers v. Galloway, 64 Ark. 627, 44 S. W. 454, 39 L. R. A. 636; Minter v. State, 104 Ga. 753, 30 S. E. 989; Railroad v. Manning, 70 Ill. App. 242; Bartlett v. Jenkins, 22 N. H. 63; Williams v. Railroad, 82 Tex. 559, 18 S. W. 206; State v. Camden, 38 N. J. L. 302; Railroad v. Beeler, 90 Tenn. 553, 18 S. W. 391; Kibbe v. Benson, 17 Wall 624, 21 L. Ed. 741; Holmes v. Goderich, 36 Canada L. J. 423; People v. Blanding, 63 Cal. 339; State v. Corporation, 85 Me. 17, 26 Atl. 947; 21 Am. and Eng. Ency. Law, 447.     (2) In the interpretation of contracts the court should place itself as near as may be in the situation of the contracting parties when the agreement was made and endeavor to ascertain the actual intent of the parties. Porter v. Allen, 8 Idaho 358, 69 Pac. 105; Raymond v. Hodgson, 55 Ill. App. 423; Smith v. Smith, 71 Mich. 633, 40 N. W. 21; Ellis v. Harrison, 104 Mo. 270; Trans. Co. v. Mining Co., 141 Fed. 563; Building & Loan Assn. v. Obert, 169 Mo. 507; Guccione v. Scott, 47 N. Y. S. 475; Fidelity & Guaranty Co. v. Commissioners, 145 Fed. 144; Filter Co. v. Kirk, 102 Ill. App. 246; Granath v. Johnson, 90 Ill. App. 308; Howland v. Leach, 28 Mass. 151; Pomeroy v. Benton, 57 Mo. 531; Wisner v. Field, 15 N. D. 43, 106 N. W. 38; Keller v. State, 87 S. W. (Tex.) 669.     (3) Respondent's action in setting up a competing business to that sold to appellant practically destroys the good will bought of respondent by appellant and no court of equity will permit such conduct. Story on Partnership, sec. 99;

Haverly v. Elliot, 39 Neb. 201, 57 N. W. 1010; Munsey v. Butterfield, 133 Mass. 494; Bell v. Ellis, 33 Cal. 625; People v. Roberts, 159 N. Y. 70, 45 L. R. A. 126; Menendez v. Holt, 128 U. S. 514, 32 L. Ed. 526; Glenn v. Mfg. Co., 61 N. Y. 226, 19 Am. Rep. 278. (3) The obvious intention of a contract for the sale of a business coupled with an agreement by the seller not to engage in the business in the same town so long as the buyer continues in business is to sell the good will of the business. Shafer v. Sloan, 3 Cal. App. 335, 85 Pac. 162; Harvester Co. v. Cramer, 110 Ill. App. 413. Where the good will consists of the advantages of location it follows an assignment of the lease of that location. Williams v. Farrand, 88 Mich. 473, 14 L. R. A. 161.

*Patterson & Patterson* for respondents.

(1) The following are the two strongest cases cited by appellant on this point. Rogers v. Galloway, 39 L. R. A. 636; Harris v. Theus, 10 L. R. A. (N. S.) 204. These cases would be in point if in the Rogers case the college had been located at another and different town than that of Searcy, in the immediate vicinity of Searcy, and the Theus case would be in point had the plaintiff's distillery been located at another and different town than that of Geneva, of about the same relative standing as Geneva, instead of within one mile of the courthouse of the town. The respondent understood that this contract providing that he was not to further engage in the produce business at Rogersville did not bar him from engaging in that business at Henderson. That is the way the average man would understand it. That is the way the trial court understood the contract and that is the way any court should understand it. If doing business at a different town and at a distinct and different trading point than Rogersville is equivalent to engaging

in business at Rogersville, then how is the court going to determine the scope of the phrase ''at Rogersville.'' Does it extend to Springfield? Or does it extend to Marshfield?

GRAY, J.—On and prior to the 14th day of April, 1911, the defendant was engaged in the produce business at Rogersville, in Webster county, this state, a small town, unincorporated and located on the St. Louis & San Francisco Railroad. On that day, by written contract, he sold his business to plaintiff herein, for the sum of $600. The contract contained the following provisions: ''The said O. H. Medley for and in consideration above mentioned hereby agrees not to engage in the produce business at Rogersville, Missouri, for a term of five years from the 22d day of May, 1911.'' After the execution of the contract, plaintiff took charge of the business and was conducting the same at the time this suit was commenced. About a month later defendant purchased a country store at Henderson, also an unincorporated place, about one and one-half miles north of Rogersville, and engaged in the business of buying, shipping and dealing in produce at that place, and this suit was instituted by plaintiff to enjoin defendant from conducting said business. The case was tried on an agreed statement of facts, which with the contract, constituted all the evidence in the case.

By the agreed facts it appears that the town of Henderson is not on a railroad and has no postoffice, but its mail is delivered by rural route from Rogersville; that defendant lived at Rogersville, had a telephone, and when any of his old customers solicited prices from him, he furnished the same and agreed to buy their produce if delivered at Henderson; that Rogersville was the shipping point from which defendant shipped all his produce; that within a radius of six miles from Rogersville, were three or four country

stores; that prior to the sale of defendant's business to plaintiff, there were country collectors who traveled about and picked up produce in the country, and who marketed a portion of their produce at the defendant's store in Rogersville; that a number of said merchants whose country stores were near Rogersville, had transferred their business to defendant, and ceased to patronize the plaintiff; that the merchant at Henderson whose business defendant purchased, also handled produce, but did not ship the same, but sold a part of it to the defendant when he was running the business at Rogersville.

The court dismissed the plaintiff's bill, and he appealed to this court. The respondent concedes that plaintiff is entitled to the relief prayed for if, by engaging in business at Henderson, he violated his contract. This is to be determined by the construction given the words "at Rogersville," found in the contract. Webster defines the word as follows: "Primarily, this word expresses the relations of presence, nearness in place. It is less definite than in or on; at the house may be in or near the house."

In 4 Cyc. 365, it is defined as follows: "A word of somewhat indefinite meaning, whose significance is generally controlled by the context and attending circumstances denoting the precise sense in which it is used. Used in reference to place it often means 'in' or 'within;' but its primary idea is 'nearness' or 'proximity,' and it is commonly used as the equivalent of 'near' or 'about.' "

In the Standard dictionary, it is said: "With the names of cities and town the use of 'at' or 'in' depends not chiefly upon the size of the place, but upon the point of view; when we think of inclusive space, we employ 'in.' "

In the case of Rogers v. Galloway Female College, 64 Ark. 627, 44 S. W. 454, 39 L. R. A. 636, the defendant agreed to give the sum of $2500 for the

purpose of locating, building and maintaining a college "at the town of Searcy." The college was located near Searcy, but not within its limits. A suit was brought to enforce the payment of the subscription, and payment was resisted. on the ground that the college was not located within the town of Searcy. The court held against the defendant and said: "The preposition 'at,' when used to denote local position, may mean 'in, on, near by,' etc., according to the context, denoting usually a place conceived of as a mere point."

In Harris v. Theus, 10 L. R. A. (N. S.) 204, the plaintiff had entered into a contract with the defendant, by the terms of which the latter agreed not to engage in the turpentine business so long as the former operated a turpentine still at Geneva. The plaintiff operated a turpentine distillery near Geneva, at a point a half mile from the corporate limits, and defendant claimed that plaintiff was not operating his distillery at Geneva within the meaning of the contract. Geneva was the shipping point from which the plaintiff shipped his product. The court in holding against the defendant, said: "Upon the face of the contract and the averments of the bill, we find nothing that requires it to be held that 'at,' as used in the contract, means within the corporate limits of Geneva, and the averment of the erection of the distillery near Geneva is sufficient."

In Lovin v. Hicks, 133 N. W. 575, the sufficiency of the service on the defendant was an issue. The law required the summons to be left "at the defendant's usual place of abode." The defendant used the first floor of the building as a store, and the second for his family residence. The summons was left with his wife in the store. The court held it sufficient and said: "The words 'at his house of usual abode' do not mean 'in' such house. The word 'at' expresses the idea of

Counts v. Medley.

nearness of place, and is less definite than 'in' or 'on.' "

In Los Angeles v. Hannon, 112 Pac. 878, in construing a deed, the court said: "The word 'at' when applied to the place or location, is not treated as definitely locative. At the house may be in or near the house. A railroad was authorized by its charter to intersect another road 'at Charlotte,' and it was held that an intersection a thousand yards outside Charlotte satisfied the requirement."

In Rogers v. Burr, 97 Ga. 10, 25 S. E. 339, a subscription contract gave the subscriber the right *at* the expiration of three years to elect whether he would keep the stock, and it was held that he had the right to elect within a reasonable time after the expiration of the three years.

In Davidson v. Crump Mfg. Co., 99 Mich. 501, 58 N. W. 479, the tenant's lease provided that he should have the right to remove his property from the leased premises "at the end of this term." The court held he had a reasonable time after the expiration of the term to remove his property.

In Waynesville v. Satterthwait, 136 N. C. 226, 48 S. E. 661, the law provided that certain improvements should commence "at the courthouse" in a certain town. The improvements were commenced at the corporate line, and the court held they were commenced "at" the courthouse within the meaning of the law. To the same effect are O'Connor v. Nadel, 117 Ala. 595, 23 So. 532; Ray v. State, 50 Ala. 172; Minter v. State, 104 Ga. 753, 30 S. E. 989; Bartlett v. Jenkins, 22 N. H. 63.

Mr. Anderson, in his dictionary of law, defines the word as follows: "The English preposition, expressing the relation of presence, nearness in place or time. The word is somewhat indefinite; it may mean 'in,' 'within,' or 'near.' Its primary idea is nearness, and it is less definite than in or on."

In Rice v. Railway Co., 63 Mo. l. c. 323, the court had under consideration a shipper's contract, providing, "no claim for loss or damage on live stock will be allowed unless the same is made in writing before or at the time of unloading." The court held that the phrase "at the time of unloading," did not mean at that moment, but so soon thereafter as satisfied the object of the notice.

In construing a contract or any term used therein, the surrounding circumstances may be looked to by the court to determine the sense in which the parties to the contract have used words of a doubtful or double meaning, and to determine the true sense in which such a word is used in a contract, the courts must consider the subject-matter concerning which the words were used.

In the case of Kramer v. Old, 119 N. C. 1, 34 L. R. A. 389, 56 Am. St. Rep. 650, 25 S. E. 813, the plaintiff prayed for an injunction restraining the defendant from engaging in a business which he had formerly sold to plaintiff and agreed not to engage in in competition with plaintiff. The court in granting the relief prayed for, said: "As a court of chancery, we must declare that, where injunctive relief is asked, it is the duty of the court to restrain the contracting parties from violating the spirit, as well as the letter, of the agreement."

While the general rule is, that in the absence of an express agreement, the sale of a mercantile business, together with the good will thereof, does not import an agreement by the vendor not again to engage in a competing business. [Note to Gordon v. Knott, 19 L. R. A. (N. S.) 762.] Yet where the vendor expressly agrees not to engage in the same business at the same place for a specific time, or so long as the buyer continues in business, the obvious intention is to sell the good will of the business. [Shafer v. Sloan, 85 Pac. 162.]

Where the language of the contract is clear, the contract is obligatory on the parties, though the consequences may be harsh, and the stipulations contrary to the mode in which men ordinarily bind themselves by such contracts. [Conservative Realty Co. v. St. Louis Brewing Assn., 133 Mo. App. 261, 113 S. W. 229; Bauman Jewelry Co. v. Bertig, 81 Mo. App. 393; Mo. Edison Elec. Co. v. Bry, 88 Mo. App. 135.] But where the terms are doubtful, or have a double meaning, the situation of the parties in respect to the subject matter of the contract, the surrounding circumstances, the usages of the business and the purposes to be accomplished, are all matters of consideration in arriving at the true construction of the instrument. [Inlow v. Bybee, 122 Mo. App. 475, 99 S. W. 785.]

It has been settled since an early day in this state, that common sense and good faith are the leading characteristics of all interpretations. [Fenton v. Perkins, 3 Mo. 23; Saxton National Bank v. Haywood, 62 Mo. App. 550.] And where there is room for construction, a contract should not be interpreted so as to give an unfair advantage to one of the parties to it over the other. [McMannus v. Fair Shoe & Clothing Co., 60 Mo. App. 216; Lumber Co. v. Dent, 151 Mo. App. 614, 132 S. W. 320.]

It is also a rule of construction that the promisor is bound according to the sense in which he apprehended that the promisee received his proposition. [Bruner v. Wheaton, 46 Mo. 363.]

We gather from the agreed statement of facts that the defendant was in business at Rogersville; that this business consisted in buying, selling and shipping produce from that point; that there were country stores near Rogersville which purchased produce from farmers and others, but did not ship the same and sold a part thereof to the defendant; that there were men known as county collectors who went about the country, in the vicinity of Rogersville, and gathered up pro-

duce and sold the same to the defendant to be shipped from Rogersville; that the defendant sold this business, together with the personal property used in connection therewith, to the plaintiff, and agreed for a valuable consideration not to engage in the business he had sold plaintiff at Rogersville, for a period of five years; that the defendant lived in Rogersville, received his mail there, and about a month after he entered into the contract with plaintiff, he engaged in the identical business he had sold plaintiff, and relied upon his former customers for a large part of his business; that these customers who used to do business with him at Rogersville, and who did business with plaintiff after he purchased defendant's business, were again doing business with the defendant; that he had a telephone and was using the same in buying produce in and about Rogersville, only requiring the purchasers to deliver their produce to him at Henderson.

From this testimony, it is apparent that the defendant was in open competition with plaintiff to the same extent and in the same manner as if his store had been in Rogersville. If the business defendant sold the plaintiff had been practically limited to Rogersville, and principally with people in Rogersville, a different question would be presented, but Rogersville was not incorporated, and only had about 250 people, and the main portion of business was necessarily carried on with people who lived outside of Rogersville. When the defendant engaged in this business at Henderson, he was practically dealing with the same people he had dealt with prior to the execution of the contract with plaintiff, and was to all intents and purposes, engaged in buying produce and shipping the same at Rogersville.

If the parties had used the words ''in Rogersville,'' then there would have been no ambiguity, and it would be the duty of the court to construe the con-

tract as made, though such construction practically nullified it. [Carr v. Ins. Co., 100 Mo. App. 602, 75 S. W. 180.] But the word "at" was used, and as we have said, the word is an indefinite one and may mean near or about. If the defendant had not purchased the store at Henderson, but had taken a stand on one of the roads leading into Rogersville and stopped persons on their way to Rogersville with produce and purchased the same and had it delivered to him, and he had then hauled it to Rogersville and shipped it, there would be no question but what he was engaged in the produce business *at* Rogersville, within the meaning of his contract. He seeks to escape because he established his competitive business in Henderson, which was also an unincorporated place without a post-office, and located but a short distance from Rogersville, and at which place he purchased produce from the same customers he had at his old stand, and also from persons in Rogersville, but required the produce to be delivered to him at Henderson.

In Robertson v. Buchanan, 73 Law J. Ch. 408, it is held not essential to the breach of such a covenant that the vendor should reside or have a place of business within the prohibited area. He may reside outside and yet commit a breach of the covenant by his personal acts.

In Love v. Stidham, 18 App. D. C. 306, it is held that the seller of such a business is liable if he serves customers within the prohibited limits, although he may have no residence, shop, store or place of business therein.

In Millspaugh Laundry Co. v. First National Bank, 94 N. W. 262, the Supreme Court of Iowa reviewed the authorities construing the term of "good will," and it is there held that "good will," though often connected with the premises on which the business or trade is conducted, is not necessarily so. And it is further said that good will "includes every positive

advantage acquired, arising out of the business of the old firm, whether connected with the premises where it was carried on, the name of the late firm, or with another matter carrying with it the benefit of the business of the old firm. . . . That good will is an advantage or benefit which is acquired by a business establishment beyond the mere intrinsic value of the capital stock; that it is the general public patronage and encouragement which a business receives from its customers on account of its local position."

When we consider the nature of the business and the manner in which it is conducted, we are led to believe that the words "at Rogersville" should be construed to mean near and about, and by giving the words such construction there is no question but what the defendant, at the time this suit was instituted, was engaged in strict competition, near and about Rogersville, with the plaintiff, for the identical trade and business he had sold to him.

The evidence discloses that the person from whom defendant purchased the Henderson store, was also a dealer in produce, to the extent that he purchased the same and resold for the purpose of shipping, and for local customers for consumption. In so far as the defendant limits his dealing in produce to that purpose, he is not violating his contract, but in buying for the purpose of shipping, he is.

The premises considered, we will reverse the judgment and remand the cause with instructions to the trial court to enter judgment in favor of the plaintiff in conformity with this opinion. *Cox, J.,* concurs; *Nixon, P. J.,* dissents.

## SEPARATE DISSENTING OPINION.

NIXON, P. J.—This is an action for an injunction in which the petition charges that the defendant was in business in the town of Rogersville in Webster

county, Missouri, and that on May 22, 1911, by written contract he sold to the plaintiff his wagon, harness, egg cases, chicken coops, telephone, etc., with the building then occupied by him and in which he was doing business; that defendant then contracted with the plaintiff "not to engage in the produce business 'at Rogersville' for five years;" that defendant violated such agreement by engaging in the produce business at Rogersville; and plaintiff asked that the defendant be enjoined perpetually from carrying on the produce business at Rogersville.

The question is sharply presented in this case whether the defendant's agreement not to engage in the produce business "at Rogersville" was an agreement not to engage in the produce business "in Henderson." Names of towns are properly geographical terms and commonly include not only the dwellings and business houses in the town but also convey the idea of a tolerably well-defined locality where such houses are situated. The litigants in this case at the time of making their contract were residents of Rogersville and are assumed to have understood the meaning of the terms "Rogersville" and "Henderson" and that the names designated certain fairly well-defined geographical areas in Webster county and their contract is to be construed with reference to such extraneous facts. If the plaintiff were asked where he is doing business now he would answer, "At Rogersville." If further inquiry was made of him how far that was from Henderson and in what direction, he would reply, "One and one-half miles, south." If defendant were asked where he is doing business, he would without hesitation reply, "At Henderson." If further inquiry was made of him how far that was from Rogersville and in what direction, he would reply, "One and one-half miles north." If inquiry was made whether he is in business at Rogersville, he would reply that he is not now

in business at Rogersville but is in business at Henderson. At the time of the execution of the written contract, Rogersville was an unincorporated town consisting of about two hundred and fifty inhabitants, covering a certain locality near the railroad depot, comprising a limited physical area on which houses were situated and business was transacted, the boundaries of which area were tolerably well-defined and understood by the inhabitants. The evidence does not disclose the number of dwelling houses in the town of Rogersville nor how many business houses there were. By the word "Henderson" the parties would understand a tolerably well-defined area in the same county, being an old town—older than Rogersville—a mile and one-half north of Rogersville, platted, having from three to five business houses,—a well-known trading point in that vicinity. The use of either of these geographical names by parties who were familiar with the locality would have excluded the other.

The numerous cases cited by appellant showing the meaning of the word "at" to be either "in" or "near" have no such application to the facts of this case as to aid us in the solution of the questions presented because no case has been cited in which the facts are so closely parallel to the present one as to furnish authority for our guidance. The meaning of the word "at" is somewhat indefinite, meaning sometimes "in" and at other times "near," but in the present case the definition furnishes no sure guide and in order to arrive at the intention of the parties the significance of the word is to be fixed by the context and attending circumstances. At the time the parties made the contract and used the term "at Rogersville," they knew there was another town a mile and one-half distant called Henderson at which the same kind of business was being carried on. If there had been no other established trading point in the vicinity of Rogersville existing as a recognized place of business, we

would be confronted with a different situation. The parties are supposed to have used the terms of their contract intelligently and to have embodied their agreement in their written contract, as no fraud or mistake is charged. If it was their intention to exclude the respondent from engaging in the produce business anywhere within a radius of six miles of Rogersville at any of the four or five recognized trading points within that radius, or if it was their intention to exclude the respondent from engaging in that business at another town called Henderson, the contract should have so expressed their intention by apt words instead of saying nothing about Henderson. If the word "at" is to be made sufficiently flexible in this connection to include the town of Henderson a mile and one-half away, why could it not be made to include the town of Marshfield, some ten or fifteen miles distant in the same county, provided defendant had gone into the produce business there and such business was in competition with his old produce business at Rogersville? Two rules of construction must be recognized in this case: First, that the words of the written contract are to be understood as used in their ordinary and popular sense, and in the absence of proof to the contrary the parties are presumed to have used their words in that sense. Second, when, as in this case there are two towns in close proximity the rule, *"Expressio unius est exclusio alterius,* would apply, and a contract not to engage in business "at Rogersville" would not exclude the right to engage in business at Henderson. Courts are not authorized to put a different construction on a contract from what the parties intended it should bear; nor are they warranted in adding to it a further term, or in striking therefrom a term the parties have employed; nor are they justified in attempting to modify or reform a contract under the vague notion of relieving a party from

163 App.—36

the hardships of an agreement into which he has willingly and knowingly entered. Parties are presumed more competent to make their own bargains than the courts are to make bargains for them. [Streeter v. Rush, 25 Cal. 68.] And courts of equity are as powerless to make contracts for parties as courts of law under the guise of enforcing the spirit of the contract.

A sale of one's merchandise business, when possession is surrendered of the storehouse in which the business has been carried on is ordinarily a sale of the good-will of the business but such sale does not prevent the vendor from engaging in the same business as a competitor of the vendee in the same town or from advertising his business in a general way even though it may diminish the trade of the purchaser. [20 Cyc. 1279.] The defendant in this case may well have been willing to sell his produce business and agree not to engage in the business again for five years at Rogersville for six hundred dollars, but if he was to contract away his right to engage in the business at Henderson, may have demanded eight hundred dollars, or perhaps would have declined to make any contract. But while the contract not to engage in the business at Rogersville would not prevent the defendant from engaging in the business at Henderson, he would still have no right to set up a business at Henderson and use that as a base of operations to engage in the produce business in Rogersville which he had contracted that he would not do. The most that is shown in the evidence in regard to the defendant transacting business in Rogersville after his sale to the plaintiff is that he made the railroad station at Rogersville his shipping point for his produce, and that his residence was at Rogersville, and that he received his mail there; that while he received some patronage from his old customers, in such cases he required them to bring their produce to his store at Henderson; that as to those who inquired by telephone for prices, he

made it a condition that he would only purchase at Henderson. Only one instance is mentioned in the evidence where a purchase was made from a man living at Rogersville and it was made by the defendant at Henderson. We think it is beyond all question that this evidence wholly fails to show that in fact the defendant actually engaged in the produce business at Rogersville after the sale to the plaintiff and that to construe the evidence to that effect would be to pervert language from its ordinary meaning. In the case of Thomas v. Administrator of Miles, 3 Oh. St. 275, Thomas and Miles were partners in trade, dealing in fancy goods, cabinet-makers' trimmings, etc., in the city of Cincinnati. The defendant sold out to the plaintiff and agreed that he would not at any time within five years enter into or be concerned in the kind of business which had been conducted by said firm. After defendant had moved to New Jersey he went back to Cincinnati and arranged for several bills of the same class of goods and told some of his former customers at Cincinnati that he would furnish the goods lower than they could be bought in Cincinnati, and under this arrangement he did furnish to parties in Cincinnati several bills of goods. It was objected that he had entered into and was doing business in Cincinnati contrary to his contract. The court said: "Now, what was the object of this stipulation in the agreement? Unquestionably to avoid the competition of a rival establishment located in Cincinnati. It did not, upon any fair interpretation, prohibit Miles from pursuing the business elsewhere, and dealing with customers residing in Cincinnati. It has relation alone to the locality where the business is pursued, and where the establishment might be found by any person desirous of purchasing the goods that were kept for sale. He shall not enter into or be concerned in the business 'within the city of Cincinnati.' To speak of a New York merchant selling goods to Cincinnati customers

as engaged in business in Cincinnati, would be such an obvious impropriety of language as to arrest the attention of the least observing, . . ." We think the facts of the Ohio case were much stronger than those in the present action and that when the evidence is fairly considered defendant has been acting in good faith so far as doing business at Rogersville is concerned, and that the judgment should be affirmed.