GENERAL BAKING COMPANY, a corporation of the State of New York,

*vs.*

ARTHUR SOLES.

*New Castle, June 7, 1932.*

*Aaron Finger,* of the firm of Richards, Layton & Finger, for complainant.

*H. Albert Young,* for defendant.

THE CHANCELLOR: In the present showing it cannot be, and is not in fact, seriously questioned that the defendant is engaged in the business of selling bakery products for himself as proprietor of the business. He buys his supplies from Dalton's Bakery which is in the wholesale as well as retail business. What he buys from Dalton's Bakery he pays for, and if he should fail to market all his purchases, the loss is his. He is not an agent for Dalton's Bakery, nor in any sense an employee for that concern.

The question then is whether the act of the defendant

in going in business for himself and in the course of that business serving bread on the route formerly served by him as the complainant's employee, constitutes a breach of the agreement referred to in the statement of facts.

The defendant concedes that the agreement entered into by him is not in unreasonable restraint of trade and that it is therefore binding on him. He contends however that there is nothing in the agreement which obligates him not to go in business for himself as an independent proprietor and in that capacity supplying customers on his former route with bakery products. All that his agreement contemplates, he contends, is that he will not serve the route as the employee of a competitor of the complainant.

The defendant relies on the contention that, quoting from *Tarr v. Stearman*, 264 *Ill.* 110, 105 *N. E.* 957, 961, "the party complaining of an infraction of a contract in restraint of trade will be held to a strict interpretation of the language of the agreement." Other cases which it is unnecessary to cite give expression to the same view.

This does not mean however that the language of such contracts should be examined in a spirit of hypercritical exactitude. If there be any room for latitude of meaning supplied by the language employed, judges I think have almost without exception adopted that interpretation which is calculated to serve the general objects which it appears the parties on the whole intended to secure. In our own State *Scotton, et al., v. Wright*, 13 *Del. Ch.* 214, 117 *A.* 131, affirmed 13 *Del. Ch.* 402, 121 *A.* 69, 31 *A. L. R.* 1162, was decided in harmony with this view. In that case a garage business in Smyrna, Delaware, with its goodwill was sold to the complainant and the defendant agreed not to re-enter said business "in or adjacent to" Smyrna. The word "adjacent" was held not to mean in immediate contact with the Smyrna town limits. Akin to this case is the case of *Counts v. Medley*, 163 *Mo. App.* 546, 146 *S. W.* 465, cited by the complainant, in which it was decided that "at" a place could mean either in or near or about the place, especially

since the business which the defendant sold to the plaintiff and which the former had agreed not to engage in "at Rogersville" was a business that had been carried on by the defendant not only in but around and about Rogersville. Those cases which hold that an agreement not to engage in business, directly or indirectly, similar to that sold, is breached by entering the business as the employee of another rather than as owner, are to be understood as exemplifying the same principle of interpretation. In such cases the words "engage in" have been held to possess an elasticity of meaning capable of embracing activity in a business broader than that indicated by the mere proprietorship thereof. In *Lanberg, et al., v. Wagner,* 101 *N. J. Eq.* 383, 139 *A.* 518, 519, it was said that the words "engage in, transact, or carry on, either directly or indirectly" a business, were meant not to limit the prohibited activity to such as would be engaged in by a principal or proprietor, but rather indicated that such limitation was excluded.

The complainant cites other cases in support of the contention that a contract in reasonable restraint of trade should be construed in the light of its manifest purpose. There can be no serious doubt as to the propriety of that principle of interpretation. It presents an element which, in conjunction with others, is generally taken into account by courts when called upon to interpret contracts. Much depends on the particular language in which the agreement is expressed for the extent to which the court will go in resorting to the purpose, or so-called spirit of the contract, as an interpretative aid in the ascertainment of its meaning. In the cases cited by the complainant as justifying its contention that the particular agreement here involved should be so interpreted in the light of its spirit and purpose as to prohibit the defendant from transacting the business he is engaged in, the contracts involved are so different in their phraseology from the contract now before the court as to be of little assistance in disposing of the present rule. For instance, in *Owl Laundry Co. v. Banks,* 83 *N. J. Eq.* 230, 89 *A.*

1055, 1056, the agreement was not to "solicit orders * * * either for myself or as employee of any other * * * persons * * * not engage in the wet wash business in any capacity for myself or others." The court, it is true, said that the complainant was "entitled to an injunction as broad as may be necessary to insure a compliance with both the letter and spirit of the defendant's agreement." The remark was made, as I gather, to rebut the contention that an agreement not to engage in the wet wash business "in any capacity" would prevent the defendant from serving as a janitor, watchman, machinist or wash scrubber, and so would be unreasonable and therefore illegal. The court said no to this contention, because, as I understand the opinion, the spirit of the agreement was only to protect the complainant from the defendant's competition and hence the language was to be limited accordingly. Therefore, the court concluded, the injunction should be only as broad as was necessary for the complainant's protection. Manifestly, the New Jersey case is of no pertinency to the one now before this court.

I shall not burden this opinion with a review of the other cases cited by the complainant upon the point that a liberality of interpretation should be favored in such cases as this one. A careful reading of the cases will demonstrate the limitation of their application.

If the contract in question prevented the defendant from engaging in the business directly or indirectly, it may be conceded without deciding that the injunction should issue. Such however is certainly not its express language. Where such is the language, authorities are to be found which would prevent the defendant from engaging in the business as the employee of another. This defendant is not however engaged as an employee.

The question here is whether the agreement does not by its language limit the restraint upon the defendant solely to his working as an employee for another. If so, there can be no justification for restraining him from acting as the proprietor of the business. Certainly it is competent for the

parties to restrict their agreement to a prohibition that the former employee shall not act as employee for another, leaving him free to act on his own behalf as principal. In examining the contract with the view of ascertaining its meaning, I know of no rule of construction which would allow the court to conjure up a purpose to be served by the contract, and then, having imagined the purpose, twist the plain import of the language actually employed into serving that purpose—a purpose which the restricted language of the contract appears to negative. What the complainant seeks to have the court do is to assume first, that the purpose of this agreement was to protect the complainant from all competitive conduct on the part of the defendant in whatever role he may practice it, and then hold that the language used, however plain its import to the contrary may be, expresses an intent as broad as the assumed purpose. This ignores the fact that the language used may have been expressly designed to protect the complainant from the competition of the defendant in only a restricted degree. It may very well be that the complainant was satisfied that no bothersome competition could arise from the defendant's conduct as a principal in business, and hence it was content to bind him to abstain from acting as an employee for a competitor.

The question then comes down to this—what is the extent of the restraint upon the defendant which the particular language of the contract imposes? Is it so phrased that its inhibition is directed solely against the defendant's acting as an employee for a competitor? If so, then the complainant has no right to relief broader than the contract calls for.

What then does the contract mean? I can gather nothing from it beyond this—that the defendant shall not act as an employee of a competitor of the complainant and as such sell products along the forbidden route which are in competition with the complainant's products. The phrase "accept employment" indicates the sense to be that the de-

fendant shall not act as an employee of another. While in ordinary speech it is not unusual for one to speak of another who is in business for himself as being employed in the sense of engaged in such and such a business, yet when the expression is "accept employment" it would be difficult to understand anything to be meant other than that engagement as an employee was referred to. The word "accept" can have no other connotation. It implies a relationship between two persons, the one an employer and the other an employee. I conceive that the phrase "accept employment" when used in the contract means an engagement as an employee. Such certainly is what the common understanding of the words would attribute to them. That this, the natural and ordinary meaning, is what was intended is further indicated by the later clause appearing in the contract, viz., "if such employment requires my serving said competitive products, etc." Now certainly a man who is engaged in business for himself and in a loose sense of the word employed therein, cannot be "required" to do anything. He is his own master. Therefore when we say "if such employment requires," the idea of liberty of choice is negatived, and we are driven to the inference that a relationship is contemplated by which one person is given a right to require something of another. Such a relationship exists between an employer and his employee. The clause referred to is inconsistent with an engagement in business as a principal.

It follows then that the language of this contract is such that it restrains the defendant only from acting as an employee for any competitor of the complainant in the sale of competitive products. There is no language in it upon which it is possible to base any broader restraint.

Inasmuch as the defendant in all that he has done has not acted as an employee of a competitor, the injunction should be refused.

Order accordingly.