## Bickett, Snyder, Brown and Burnett v. Meade County and The State Highway Commission of Kentucky.

(Decided June. 22, 1923.)

### Appeal from Meade Circuit Court.

Highways—Location Held in Substantial Compliance with Right of Way. Agreement, Requiring Right of Way to Pass Through Community.—Where an agreement by which defendants contributed to a fund in aid of a federal highway and agreed to give the necessary right of way specified. the route as passing through two villages, an unincorporated community grouped around a crossroads, and a farm, it was not thereby required that the highway should pass directly through the crossroads of the community, any more than that it should pass through the main street or any particular part of the villages or farm, and the agreement was substantially complied with by locating the highway through the community within half a mile of the crossroads, especially where one of the defendants, who testified he lived in that community, lived farther from the crossroads than the location of the highway.

L. A. FAUREST and H. L. JAMES for appellants.

WOODWARD & WARFIELD and JOHN D. HARDIN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

These four actions were separately commenced in the Meade circuit court by Meade county and the State Highway Commission as plaintiffs, against appellants, Bickett, Snyder, Brown and Burnett, respectively, in the year 1921, to enjoin them and each of them from interfering with the construction of the federal highway, running from Louisville, Kentucky, to Paducah, Kentucky, passing over and through appellants' farms in Meade county, on the ground that Meade county and the highway commission had the right and privilege by written grant to go upon, over and across the lands of the four defendants for the purpose of locating, building and constructing a highway. The document upon which the county and highway commission relied for authority to thus proceed reads:

"We, the undersigned subscribers, hereby subscribe, bind and obligate ourselves to pay the amount set opposite our names to help construct a federal highway in

Meade county, Kentucky, known as the federal highway between Paducah, Kentucky, and Louisville, Kentucky, provided said highway passes through the following places in Meade county, Kentucky: Running from Tip Top to Grahampton, Kentucky, thence to Hog Wallow, thence to William Hilf's farm, and we further agree and bind ourselves to donate any lands or grounds necessary for a right of way for said federal highway, which is to be built according to federal and state plans, and we further guarantee the payment of my said subscription to the Farmers' Deposit Bank, Brandenburg, Kentucky.''

Although all of appellants had been very active in their efforts to induce the county and highway commission to locate the highway through the neighborhood in which they lived they apparently became dissatisfied with the location after the stakes had been driven because it did not pass precisely through the crossroads around which the community of ''Hog Wallow'' is situated, and being dissatisfied they undertook to obstruct and prevent the construction of the highway over and across their lands.

It will be observed that they each agreed to give the right of way through their lands and to pay the sum set opposite their respective names on the petition, ''Provided said highway passes through the following places in Meade county, Kentucky: Running from Tip Top, Kentucky, to Grahampton, Kentucky, thence to Hog Wallow, thence to Wm. Hilf's farm.'' It is agreed that the road passes through Tip Top, a village one-half mile wide, and through Grahampton, another village about the same size, as well as through Hilf's farm, but it is insisted that it does not pass through Hog Wallow. This point as claimed by the appellants, is a crossroads, but there is no village, not even a single house at the road intersection. The neighborhood of Hog Wallow is quite thickly populated and is a mile or more across. People living in that vicinity give their address as Hog Wallow. Even one or more of these appellants, when asked on examination as a witness as to his address, answered ''Hog Wallow,'' although his house was further away from the crossroads than is the location of the new highway. While it is denied that the highway passes through the crossroads which appellants claim is the exact spot known as Hog Wallow, it is admitted by all that it does pass through the community known as Hog Wallow, and

only a short distance from the road intersection for which appellants contend. There is abundant evidence to show that Hog Wallow is generally spoken of and recognized in that vicinity as a community or neighborhood and not a village or point. One may go to Hog Wallow by stopping at the intersection of the roads where no one lives, but generally one going to Hog Wallow does not stop until he reaches one of the houses in the community around the crossroads, of which there are many. It is further in evidence that it would be practically impossible at reasonable expense to construct a highway through the intersection, but that the location selected by the highway commission and which is only about one-half mile from the intersection is a good one. It is also shown in evidence by appellants that they would not have been satisfied with the road had it been constructed within a few feet of the intersection; that they insist upon a literal compliance with the writing. We have concluded, in accordance with a former order by a majority of the court on application for injunction in this case, that inasmuch as Tip Top and Grahampton are villages covering quite an area and that Hilf's farm is one of considerable acreage not requiring the location on any particular spot, Hog Wallow must be treated as a community in like manner, and that the road commission had the right to reasonably and feasibly locate the highway through any part of either of the said villages, neighborhood or farm, and when so located a substantial compliance was had with the requirements of the above copied writing. It was not intended, we apprehend, either by the appellants or by Meade county or the highway commission in signing or acting upon the said subscription to definitely locate the highway upon any particular spot either in Tip Top, Grahampton, Hog Wallow or Hilf's farm, this being but a general route or location along which it could be reasonably varied to meet the exigencies of the case. It is not contended that appellants would not have been bound on their subscriptions and right of way grants had the highway been located along some street through either of the villages other than the main street thereof or at a distant point from the residence of Hilf on his farm or at any other particular point. These four points through Meade county were designated as a general location of the highway, it being intended to locate the road along that general route and not upon any certain or definite spot. In lo-

cating the road through the community of Hog Wallow we are convinced that the intent and purpose of the subscription agreement was substantially if not literally carried out and performed. In other words, the highway commission did not have to follow any definite line but were required only to keep to the general route set out in the writing to substantially comply with the requirements of the agreement. In the recent case of Webb v. Dunn, 198 Ky. 111, a subscription contract similar in many respects to the one under consideration and intended to aid the construction of the same general highway through Livingston county was under consideration, and we held that the condition requiring the road to be located on a certain named ferry on the Tennessee river but which was located at another ferry about three-quarters of a mile away was a substantial compliance with the subscription agreement. The location in that subscription contract reads:

"For the construction of a federal highway, known as the Ohio river highway, which passes through Livingston county, beginning at Vicker's ferry on the Tennessee river, crossing the Cumberland river at Smithland, thence via Salem to the Crittenden county line."

Instead of beginning at Vicker's ferry on the Tennessee river the route was changed about 2,500 feet from the river so as to go by Clerk's ferry, which is about three-quarters of a mile from Vicker's ferry. That we held was a substantial compliance with the subscription agreement. The highway now under consideration through Meade county passes much closer to the road intersection for which appellants contend than did the road in the Webb v. Dunn case, supra; and does in fact pass through the community known as Hog Wallow.

We are persuaded that this is a substantial compliance with the subscription agreement and that the judgment of the lower court permanently enjoining appellants from interfering with the construction of the road, following a temporary injunction granted by a majority of this court, should not now be disturbed.

Judgment affirmed. The whole court sitting and concurring except Judge Moorman.