## Fayette County Board of Education v. Tompkins, et al.

(Decided February 5, 1926.)

### Appeal from Fayette Circuit Court.

1. Schools and School Districts—Statute Requiring Establishment of County High Schools at County Seat Held Substantially Complied with.—Ky. Stats., section 4526b-2, requiring establishment of county high schools at county seat, held substantially complied with by establishment of school within .7 of a mile from corporate limits of county seat with continuous population extending from such limits to established school.

2. Schools and School Districts—Statute Requiring County High School to be Located "At" County Seat, Held Not to Require Establishment "Within" Corporate Limits.—Ky. Stats., section 4526b-2, requiring establishment of county high school "at" county seat, held not to require establishment of high school within corporate limits of county seat, in view of definition of word "at" as used with reference to location, not having the same significance as the words "in" or 'within" (citing Words and Phrases, Second Series, "At.")

3. Statutes—In Construing Statute, Fundamental Rule is to Ascertain Intent and Purpose of Legislature.—In construing statute, fundamental rule is to ascertain intent and purpose of legislature in enacting it.

4. Schools and School Districts—Locating County High School Within Reasonable Proximity to Corporate Limits of County Seat Held to Comply with Purpose of Legislature Requiring Establishment of School at County Seat.—Under Ky. Stats., section 4526b-2, requiring establishment of county high school at county seat, when location is in reasonable proximity to corporate limits of county

seat, intention and purpose of legislature to provide location convenient to entire population of county is complied with, and requirement as to location is fulfilled.

R. W. KEENON for appellant.

HOBBS & HANSEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, A. B. Tompkins, and 26 other citizens and taxpayers of Fayette county residing outside of the corporate limits of the city of Lexington, filed this equity action in the Fayette circuit court against the appellant and defendant below, the Fayette County Board of Education, seeking to compel it to pay tuition of plaintiff's children who had completed the course of the county free common schools and who were eligible to enter high schools, for their attendance in the university high school located in Lexington, Kentucky. It was alleged in the petition that defendant had never established nor did it maintain any high school within the city of Lexington, the county seat of Fayette county, as plaintiffs claimed it was its duty to do under the provisions of section 4526b-2, a part of our present statutes, and which itself is a part of an act relating to public schools enacted in 1908 and commonly known as the Sullivan Act. The present and next preceding section to that above referred to (4526b-1) requires the county board of education of each county to establish therein one or more county high schools within two years after the passage of that act, "provided there is not already existing in the county a high school of the first class," in which case the board was exonerated from the duty of establishing another one by making arrangements with the trustees of such high school for the free tuition of pupils in the county eligible thereto, and the board was vested by that section with full authority to make such an arrangement. The section relied on (4526b-2) says in part: "The first county high school to be established in the county (by the county board of education) shall be located at the county seat, provided there is not already existing in the county seat a high school of the required grade," and it was to enforce that provision, or the provided substitute for its failure (i. e., the payment by the board of the tuition of county pupils eligible

and desirous to take the high school course) that this action was filed.

The answer pleaded the want of funds as a reason why defendant had not established and maintained a high school *within* the corporate limits of the city of Lexington, and also facts showing that it had contracted expenses for teachers in the five or six other high schools it maintained in the county, which with other necessary expenses amounted to as much or more than its possible income as measured by the maximum limits of the law. It further pleaded that some few years ago it erected a first class high school located .7 of a mile south of the corporate limits of Lexington on the Harrodsburg pike; that the city was rapidly growing in that direction and that residences had been constructed and were occupied extending from the corporate limits to that building, which was and is known as Picadome school, and that it was large enough and sufficient in every respect to take care of and accommodate, not only paintiff's children, but all others within the county who were eligible and desired to attend it; that in constructing that school it did so with the intention and purpose of complying with the above excerpt from the statute, and it alleged that by so doing it substantially complied therewith, and that it was advised by the then attorney general of the state to the same effect. As a reason for erecting that school building as well as acquiring the ground therefor it also averred, that at the time it was limited in funds and that a suitable and eligible site with proper space was difficult if not impossible of acquisition within the corporate limits, and that the site so selected near to the corporate limits was elevated, spacious and obtained at a reasonable price and much less than it would have cost within the city. A demurrer filed to the answer as a whole was sustained and defendant declining to plead further, judgment was rendered against it as prayed for in the petition, to reverse which it prosecutes this appeal.

We had before us the same statute and involving the same duties on the part of the county board in the recent case of Christian County Board of Education v. Morris, 207 Ky. 221, and in our opinion in that case we held that it was the primary duty of the county board of education to either establish and maintain a high school as directed in the statute or to defray the tuition expenses of pupils attending a high school in the county seat if one was

therein maintained, and arrangements should be made for the attendance of such pupils. While it does not appear in the opinion in that case, yet the fact was that a stipulation was therein made showing the number as well as the locality of various high schools maintained by the Christian county board of education, and that the nearest one to the city of Hopkinsville, the county seat of the county, was between six and seven miles, and we held that "The primary duty of a county board of education under the statute above (4526b-2) is to establish and maintain a high school at the county seat by one of two plans," and that "In the case now before us there is neither a substantial nor any compliance with the provisions of the statutes." That opinion was eminently proper under the facts of that case, since by no course of reasoning could it be insisted that a high school located between six and seven miles from the corporate limits of the county seat town was in any sense "at the county seat" as is required by the statute as the place for the location of the first and only high school if but one is established and maintained.

In this case, however, the required established high school was located within .7 of a mile from the corporate limits of the county seat town with a continuous population extending from such limits to the established school, and the question is: Whether such location under the facts may propery be considered as being *at* the county seat within the intent and purpose of the statute? In the first place, it will be noticed that the opinion in the Morris case broadly intimated and inferentially held that a substantial compliance with the statute was all that was required, and in this opinion we expressly adopt that view without qualification. So that, if the answer in this case had not alleged the fact showing a literal compliance with the statute, we would be bound to hold that it was sufficient to show a substantial compliance therewith.

If, however, we were in error in that conclusion (but concerning which we have no doubt) we are then equally positive that both the etymological as well as legal definition of the word "at," as used in the statute with reference to location, does not have the same significance as the words "in" or "within," so as to require the establishment of the high school within the corporate limits of the county seat own. As applied to location, Mr. Webster in defining the word says, "Primarily, this word expresses the relation of presence or contact in space or

time, or of direction towards. It has much the sense of *to* without its implication of motion, and is less definite than *in, or, by,* etc. Thus, at the house, may be *in* or *near* the house." In the case of Waynesville v. Satterhwait, 136 N. C. 226, the question involved was the meaning of the word "at" as used in a statute requiring the township board in improving a road to begin "at the courthouse," and it was held that a beginning of the road at the point on the line of the corporate limits of the county seat was a compliance with the statute, although the courthouse was a considerable distance therefrom, since the word "at" meant, as used in the statute, "near to" the courthouse. The case of Murdock v. Klamath County Clerk, 62 Ore. 483, was one involving the question as to whether the county authorities had complied with the statute requiring the construction of a courthouse at a named town, which town the act created the county seat of the county, when it had built the courthouse 1,000 feet outside of the corporate limits of that town, and it was held that the statute was complied with, since the primary significance of the word "at" as used in the statute was "near to" or in proximity to the corporate limits of the town.

In the second series of Words and Phrases, volume 1, page 343, the compiler of that work, in giving the definition of the word "at' as applied to location, says: "The word 'at' is a word of somewhat indefinite meaning, whose significance is generally controlled by the context and attending circumstances, denoting the precise sense in which it is used. Used in reference to place, it often means 'in' or 'within'; but its primary sense is 'nearness' or 'proximity,' and it is commonly used as the equivalent of 'in' or 'about.' The word as used in a covenant not to engage in a certain business within ten miles of a certain town, so long as the other party to the agreement should operate such business 'at' that place, prevents the party making the covenant from engaging in the business, though the business operated by the other party was outside of the corporate limits of the town." He cites as supporting that statement these cases, some of which we have examined and find them to support the statement: Harris v. Theus, 43 South. 131, 134, 149 Ala. 133, 10 L. R. A. (N. S.) 204, 123 Am. St. Rep. 17 (citing 4 Cyc., p. 365); Rogers v. Galloway Female College, 44 S. W. 454, 64 Ark. 627, 39 L. R. A. 636, 639; Williams v. Ft. Worth & N. O. R. Co., 18 S. W. 206, 208,

82 Tex. 553; O'Conner v. Nadel, 23 South. 532, 117 Ala. 595, 598; Ray v. State, 50 Ala. 172, 173.

The text in 4 Cyc. 365-366, in defining the same word says that when it is used in reference to place it is often done in the same sense as "in" or "within," "But its primary idea is 'nearness' or 'proximity,' and it is commonly used as the equivalent of 'near' or 'about.'" The same primary definition is given in the text in 5 C. J., pages 1420-21-22, para. 1, and in both publications supporting cases from nearly all the courts of the country are cited in the notes. In the case of O'Conner v. Nadel, 117 Ala. 595, it was held that a mortgage describing the property as "Known as the town property of said Attalla Iron and Steele Company at Attalla," included property near to but outside of the corporate limits of Attalla. In the case of Magoffin v. Holt, 1 Duv. 95, in discussing the meaning of the word "at," the opinion said: "It may be admitted, as argued, that the word 'at' is not invariably used to denote a fixed and definite time or place, and that it is sometimes so used as to mean 'about,' or 'near to,' the time or place stated. 'At the house' may, and often does, mean about or near the house."

In the case of Webb v. Dunn, 198 Ky. 11, certain parties had executed their notes toward the construction of a state highway and in making the subscription it was agreed that the highway should begin "at Vicker's Ferry on the Tennessee river." The road was constructed, but the beginning point, while on the Tennessee river, was from one-half to three-quarters of a mile from Vicker's ferry, but intersected the continuation of the road if it had commenced at Vicker's ferry 2,500 feet from the beginning point. The subscribers refused to pay their notes executed for their subscription and defended actions filed against them to compel them to do so upon the ground that the consideration for their subscriptions had been violated; but we held otherwise, and in doing so said: "Passing the question of pleading and the sufficiency of the evidence to show that the note was conditional, it must not be overlooked that even in the case of conditional subscriptions, a substantial performance is all that is required. Thus it has been held that a condition that the structure subscribed for shall be erected 'at' or 'in' a certain town does not necessarily require that it be built within the incorporated limits of such town, but a question of fact may arise as to whether the

condition is performed when the structure is located without the limits but near the boundary. Rogers v. Galloway Female College, 64 Ark. 627, 44 S. W. 454, 39 L. R. A. 636.'' That case was followed in the later one of Bickett v. Meade County, 200 Ky. 157, wherein the word ''through,'' as used in an agreement to construct a road through a named place, was construed as to not necessarily mean or contemplate that the road should be so located as to divide the place referred to into two parts, but that its construction only a short distance from that place was a substantial compliance with the terms of that subscription, and the Webb case was cited as authority for that opinion.

From the authorities, *supra,* it will also be found that the word ''at'' in referring to place primarily means ''near to'' that place and not necessarily *within* it. In construing statutes the fundamental rule is to ascertain the intent and purpose of the legislature in enacting them. The purpose of the statute now under consideration was to provide at least one high school located as conveniently to the entire population of the county as was practicable. Proceeding, therefore, upon the theory that the county seat in most instances occupied that convenient position, the legislature fixed it as the place to establish such high school, and when the location is in reasonable proximity to the corporate limits of the county seat, the intention and purpose of the legislature is complied with, and the requirement it exacted, as to the location, is fulfilled. Such a construction not only coincides with adjudged cases and text writers in dealing with the same point, but it is both practical and sensible, and furnishes, to all intents and purposes, as convenient high school to the pupils of the county as if it was located within the corporate limits.

Great stress is made in brief of counsel for plaintiffs that pupils on the opposite side of the county will be compelled to travel a mile or so further to reach the school at Picadome than would be required of them if the school had been located in the city of Lexington. But we do not consider that a fatal objection to the location, since the student who would decline the opportunity to attend the school because of that fact would not be greatly benefited by the learning he would acquire if the school was closer and he had attended it. The thirst for an education of one who would appropriate it to the betterment of his country is not so easily quenched. The

day is not far behind us when the student really desiring an education was glad of the opportunity to walk three or four miles in the bitter cold, over rough and muddy roads to get to the schoolhouse, and when such one completed that school he was usually heard from. Today the conception is too prominent to bring the schoolhouse to the door of the student, or carry him to it, and then both he and his parents expect his education to be given him somewhat after the fashion that the good mothers of yore gave their children vermifuge with a spoon. We do not think that any such was or should be the intent and purpose of the law, and that when it affords a reasonable opportunity in the way of facilities, conveniences, etc., to obtain an education, the intent of the statute and the duty of the sovereignty are fully met.

Under the circumstances of this case and the authorities, *supra,* we conclude that the learned judge who tried the case was in error in sustaining the demurrer to the answer wherein it alleged the establishment of the high school at Picadome, and for that reason the judgment is reversed, with directions to set it aside and to overrule the demurrer, and for proceedings consistent with this opinion.