## In re Construction of County Courthouse (No. 2)

*G. Thomas Miller,* of *McNees, Wallace & Nurick,* for petitioners.

*W. E. Shissler* and *Franklin R. Bigham,* for objectors.

MacPHAIL, P. J., October 26, 1973.—On May 1, 1973, the Commissioners of Adams County filed a petition for the approval of plans for the construction of a county courthouse and office facilities under the provisions of the Act of August 9, 1955, P.L. 323, as amended, 16 PS §2315(b). In a previous opinion under date of May 9, 1973, In re Construction of County Courthouse (No. 1), 63 D. & C. 2d 585, we held that the petition would be considered as a petition to relocate the courthouse in accordance with proposal no. 1 as set forth in the petition. We further ordered that a hearing be held, that the notice thereof be advertised and that the plans and specifications be available for public inspection pending the hearing. Pursuant to that order, a hearing was held on June 21, 1973. Prior thereto, an appearance was entered by counsel on behalf of certain citizens and taxpayers of Adams County objecting to the prayer of the petition.[1]

At the hearing, petitioners presented certain drawings and other related matters but did not have available detailed plans and specifications for presentation to the court. Strenuous objections were made by the objectors that the failure to produce such plans and specifications was a fatal defect in the proceedings. In

---

[1] A petition raising questions of jurisdiction filed by the objectors was denied without prejudice: In re Construction of County Courthouse and Office Facilities, decided June 20, 1973.

the light of the provisions of the Act of August 9, 1955, we were obliged to hold that we could not continue the proceeding in strict accord with the provisions of the statute, since there were no detailed plans or specifications for us to approve.

However, when it became apparent that this defect would prevent us from approving the petition in its present form, we submitted to counsel the possibility of taking testimony on the legal issue of whether the courthouse could be relocated beyond the boundaries of the Borough of Gettysburg, which is the county seat of Adams County. We indicated to counsel that if this procedure were agreeable, we would rule preliminarily on that narrow issue. If we ruled in favor of petitioners, we would then permit them to amend their petition and accompany it with detailed plans and specifications for our approval; and if we ruled in favor of the objectors, the petition would be dismissed. We were of the opinion that counsel agreed to that procedure. On that basis, additional testimony was taken and exhibits offered relating solely to the issue of whether the courthouse could be relocated beyond the geographical boundaries of the Borough of Gettysburg. At the conclusion of the hearing, we directed that the notes of testimony be transcribed and that counsel be afforded ample time to present legal briefs. All of this has been accomplished and the matter is now ready for our decision.

Initially, we note that the objectors now challenge the court's jurisdiction to rule on this matter by reason of the failure of petitioners to present plans and specifications as required by the statute. As we previously stated, it was our understanding that counsel specifically agreed that, notwithstanding this defect, we would proceed to a disposition of the matter of relocation since the site of the proposed relocation was

obviously part of the "plan." In light of counsel's agreement, we do not think it is necessary for us to rule on the matter of the court's jurisdiction. Furthermore, while the failure of petitioners to present plans and specifications may be ample reason to refuse the petition, such a defect does not affect the jurisdiction of the court, which jurisdiction is clearly conferred by the provisions of the statute under which petitioners are proceeding. Finally, we are of the opinion that the commissioners did act to approve such plans as were presented to the court.

Accordingly, our inquiry here will be limited to the narrow issue of whether the Adams County Court House can be relocated from its present site in the Borough of Gettysburg to a new site in Cumberland Township. To state the question in general terms, may a county court house be located beyond the boundaries of a county seat? From the comprehensive briefs filed by counsel and from our independent research, it is readily apparent that this is a case of first impression in the Commonwealth.

From the record, it appears that the county owns land in Cumberland Township which is contiguous to the northern boundary of the Borough of Gettysburg. The county prison and county home are located on that real estate. It appears from the testimony that there is ample room on the site proposed to place a county office building, including the offices relating to the function of the courts and to provide, as well, for ample parking for those persons who use the county office facilities.[2] The problem of course is that the

---

[2] At present, the county courthouse is located one block south of the center of Gettysburg on a main highway artery with limited parking space in the immediate area of the courthouse, although there is metered public parking available within a few blocks of the courthouse. County office facilities are located in various places

site proposed by petitioners is in Cumberland Township and not the Borough of Gettysburg.

Section 405 of the County Code of August 9, 1955, P.L. 323, as amended, 16 PS §405, provides that certain enumerated county officers *shall* maintain their offices and their records "at the county seat" and in such buildings as may be erected or appropriated for such purpose. That section of the code goes on to state that: "(b) The county commissioners shall furnish each of such officers with an office in the county building, courthouse or other building *at the county seat.*" (Italics supplied.)

Adams County was created by the legislature in 1800 by the Act of January 22, 1800, P.L. 404. It was "carved" out of York County. Section 7 of the Act of January 22, 1800, supra, authorized the Commissioners of Adams County to acquire real estate *"within* the town of Gettysburgh" for the purpose of erecting thereon a courthouse, jail and offices for the safe keeping of records. (Italics supplied.)

In the same statute, Reverend Alexander Dobbins and David Moore, Sr., were appointed as trustees for the county to accept the conveyance and transfer of any property "in the town of Gettysburgh" for the purpose of erecting public buildings. Gettysburg was not incorporated as a borough until March 10, 1806, although James Gettys and his wife had on January 24, 1799, conveyed to Dobbins and Moore 116 acres in Cumberland Township on which 200 lots were laid out in the form of a town "known by the name of Gettystown." Thereafter, on February 3, 1801, Dob-

---

throughout the borough because there is insufficient space in the present courthouse. The county owns a small building adjacent to the courthouse which, if removed, would provide some limited space for expansion, but additional space would have to be purchased or condemned. The present courthouse building is 114 years old.

bins and Moore conveyed the same real estate to the newly appointed and acting commissioners of Adams County.

From these legislative enactments and conveyances the objectors contend that Gettysburg was designated as the county seat of Adams County. They reason that since the legislature not only restricted the purchase of ground for a courthouse to Gettysburg, but also designated the terms of court to be held in Adams County in the same statute, Gettysburg thus became the "seat of justice" and, hence, the county seat.[3] Having thus concluded that Gettysburg is the county seat, objectors contend that section 405 of the County Code, supra, controls and, therefore, the courthouse must remain in the county seat, to wit, Gettysburg. This same reasoning leads them to conclude that if the location of the courthouse is changed, the county seat will also be changed, a matter which has been reserved to the legislature: Blood v. Mercelliott, 53 Pa. 391 (1867).

Petitioners contend that the words "at the county seat" used in the County Code need not be construed to mean "in" or "within" the boundaries of the county seat. They point out that there are no Pennsylvania cases construing the precise meaning of "at the county seat." Does "at" mean "in" or "within" or may it also mean "near" or "beside"? The first County Code was enacted in 1834, the Act of April 15, 1834, P.L. 537. Section 10 of that act authorized the commissioners to erect such building or buildings as may be necessary for the accommodation of the courts and of the several officers of the county, "at the seat of justice." Section 117 of that act repealed all acts or parts of acts

---

[3] Attorney General McCormick in 1895 in an opinion, reported in 4 District 319 (1895), held that a "county seat" is the municipality in which the courthouse is situated.

supplied or altered by the act *except* as provided in section 116. Section 116 saves from repealer any special provision made by law for any city, borough, disstrict or township. While petitioners contend that the Act of April 15, 1834, supra, repealed the Act of January 22, 1800, supra, we are of the opinion that this was not the effect of that statute. Even if we assume petitioners' argument to be correct in this respect, we are not persuaded that the term "at the seat of justice" was intended to be contrary to or inconsistent with the mandate of the legislature in 1800 authorizing the commissioners of Adams County to acquire real estate "within" the town of Gettysburg. Rather, we think it is more logical to conclude that the intention of the legislature in 1834 was to permit the erection of a courthouse where the seat of justice had already been established.

Two cases in States other than Pennsylvania are cited by petitioners to support their contention that "at" means "near" or "beside" rather than "in" or "within." Murdoch v. Klamath County Court, 126 Pac. 6 (1912), concerns the relocation of a county courthouse within the then present boundaries of the county seat but beyond the boundaries of the county seat as they existed at the time Linkville was designated as the county seat. The Superior Court of Oregon held that when the legislature directed that the courthouse should be located "at the town of Linkville," it was not restricting the location to the area then encompassed by Linkville and that the legislature, when it said "at the town of Linkville," intended to include a location near or in proximity to that place; especially since Linkville had no legally defined limits at the time it was designated as the county seat. (Compare the designation of Gettysburg by the legislature in 1800.) Of course, that case is helpful in construing "at" but is of no help otherwise. The

Pennsylvania Legislature did not say that the Adams County Courthouse should be "at" Gettysburg, it said it should be "within" the town of Gettysburg. Moreover, contrary to Linkville, the proposed new site of the Adams County Courthouse is not within the borough limits of Gettysburg, even as now defined. Fayette County Board of Education v. Tompkins, 280 S.W. 114 (1926), is a case where the Kentucky Legislature had directed that the first county high school to be established by any county should be located "at the county seat." The Fayette County Board decided to build a county school seven-tenths of a mile south of the corporate limits of Lexington. The Court of Appeals of Kentucky held that the action of the board was substantial compliance with the statutory requirement that it be built "at the county seat." In our opinion, there is an essential difference between building a school and building a courthouse as those two institutions relate to the county government. A courthouse is almost, if not altogether, inseparable from county government; a school bears no such close connection. Thus, the cases cited by petitioners are not decisive of the issue presently before us.

In the absence of some clear precedent in Pennsylvania or elsewhere construing the words "at the county seat" as they pertain to the location of a courthouse to mean anything other than "in" or "within" the boundaries of the county seat, we are of the opinion that the plain intent of the legislature in enacting the provisions of the County Code of August 9, 1955 was to assure that all essential services of county government would be carried on *in* the seat of county government. Thus, a novel idea of the legislature to permit "branch courts" in fifth class cities of counties with a population in excess of 60,000 was found to be unconstitutional: Scowden's Appeal, 96 Pa. 422 (1880). The

court held that the legislative enactment was "vicious" legislation intended to circumvent the Constitution then applicable which provided that certain county officers were to keep their records and papers *"in* the county town." The court said that meant *"at* the county seat" which, in turn, meant that the papers could not be moved elsewhere. (Italics supplied.)

While the location of county offices is no longer a constitutional matter,[4] the significance of the Scowden holding cannot be overlooked or treated lightly.

In summary, we hold that the County Code mandates that a county courthouse or any office building which houses the offices designated in section 405 of that code must be located within the geographical boundaries of the county seat. In reaching this conclusion, we recognize that some taxpayers of the county may be penalized both financially and as a matter of convenience by the elimination of the land the county already owns as a site for a courthouse which is desperately needed. However, the remedy for such matters is through legislation which would clearly authorize the construction sought in this petition, if, indeed, that is the will of the people.

As we noted in our prior opinion of June 20, 1973, our denial of this petition means it will be necessary for petitioners to begin again: Commonwealth ex rel. Bauer v. Cochran et al., 355 Pa. 318 (1946). We urge petitioners to do so at the earliest possible moment.

## ORDER OF COURT

And now, October 26, 1973, the within petition is dismissed.

---

[4] Article XIV of the Constitution of 1874 was repealed by the voters in adopting the Constitution of 1968.